UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

LEE OSKAR LEVITIN p/k/a LEE OSKAR, as an individual and d/b/a IKKE-BAD MUSIC; GREG ERRICO, as an individual and d/b/a RADIO ACTIVE MATERIAL PUBLISHING COMPANY; and KERI OSKAR, an individual,

                      Plaintiffs,

             -against-

SONY MUSIC ENTERTAINMENT, a wholly-owned subsidiary of SONY CORPORATION OF AMERICA, a New York corporation; MR. 305, INC., a Florida corporation; POLO GROUNDS MUSIC INC., a New York corporation; SONY MUSIC ENTERTAINMENT CANADA INC., a Canadian corporation; SONY MUSIC ENTERTAINMENT UK, a British entity of unknown form; SONY MUSIC ENTERTAINMENT GERMANY GMBH, a German limited liability company; SONY MUSIC ENTERTAINMENT AUSTRALIA, LTD., an Australian limited company; SONY MUSIC ENTERTAINMENT ITALY, S.P.A. an Italian corporation; SONY MUSIC ENTERTAINMENT MEXICO S.A. DE C.V., a Mexican corporation; SONY MUSIC ENTERTAINMENT ESPAÑA. S.L., a Spanish limited liability company; SONY MUSIC ENTERTAINMENT KOREA INC., a South Korean corporation; and SONY MUSIC ENTERTAINMENT FRANCE, a French entity of unknown form,

                  Defendants.

-------------------------------------------------------------

Civil Action No. 14 CV 4461 (PAC)

**MEMORANDUM OF LAW IN SUPPORT OF SONY MUSIC FOREIGN AFFILIATE DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2) OR, IN THE ALTERNATIVE, TO DISMISS BASED ON THE DOCTRINE OF FORUM NON CONVENIENS**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF FACTS ..................................................................................... 2

III.  The Complaint Should Be Dismissed For Lack Of Personal Jurisdiction. ......................... 5

      A.    Legal Standard. ........................................................................................ 5

      B.    The Court Lacks General Jurisdiction Over The Foreign Entities. ........................ 6

            1.    The Foreign Entities Do Not Have A Sufficient Presence In
                  New York For This Court To Assert General Jurisdiction. ...................... 6

            2.    Plaintiffs Cannot Rely On An "Agency" Theory To Assert
                  General Jurisdiction. .................................................................. 8

      C.    This Court Also Lacks Specific Jurisdiction Over the Foreign Entities. .............. 11

IV.   THE COMPLAINT SHOULD BE DISMISSED BASED ON THE DOCTRINE
      OF FORUM NON CONVENIENS. .................................................................... 14

      A.    There Is No Basis To Defer To Plaintiffs' Choice Of Forum. ............................ 14

      B.    The Nine Foreign Countries Provide An Adequate Alternative Forum ................ 16

      C.    The Public And Private Interests Strongly Favor Dismissal. .............................. 16

V.    CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alcoa S.S. Co. v. M/V Nordic Regent*,
654 F.2d 147 (2d. Cir. 1980) (*en banc*) ............................................................... 15

*Allstate Life Ins. Co. v. Linter Group, Ltd.*,
994 F.2d 996 (2d Cir. 1993) ............................................................................... 20

*In re AstraZeneca Sec. Litig.*,
559 F. Supp. 2d 453 (S.D.N.Y. 2008) ............................................................... 5, 11

*Beacon Enters. v. Menzies*,
715 F.2d 757 (2d Cir. 1983) ............................................................................... 13

*Beekmans v. J.P. Morgan & Co.*,
945 F. Supp. 90 (S.D.N.Y.1996) .................................................................. 16, 18, 19

*Bell Paper Box v. Trans W. Polymers*,
53 F.3d 920 (8th Cir. 1995) ............................................................................ 13, 14

*Conte v. Flota Mercante Del Estado*,
277 F.2d 664 (2d Cir. 1960) ............................................................................... 18

*Corbello v. DeVito*,
844 F. Supp. 2d 1136 (D. Nev. 2012) ............................................................... 3, 18

*Cutting Edge Enters. v. Nat'l Ass'n of Attys. Gen.*,
481 F. Supp. 2d 241 (S.D.N.Y. 2007) .................................................................. 6

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ................................................................................. *passim*

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ..................................................................................... 14, 16

*Havlish v. Royal Dutch Shell Public Ltd.*,
No. 13 Civ. 7074 (GBD), 2014 U.S. Dist. LEXIS 138835 (S.D.N.Y. Sept. 24,
2014) ......................................................................................................... 8, 9

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
466 U. S. 408 (1984) ........................................................................................ 12

*Henderson v. Metro. Bank & Trust Co.*,
470 F. Supp. 2d 294 (S.D.N.Y. 2006) .................................................................. 15

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
   763 F.2d 55 (2d Cir. 1985).........................................................................6

*Intersong-USA, Inc. v. CBS, Inc.*,
   1990 U.S. Dist. LEXIS 11645 (S.D.N.Y. Aug. 30, 1990) ........................8

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001).................................................................15, 16

*Itar-Tass Russian News Agency v. Russian Kurier*,
   153 F.3d 82 (2d Cir. 1998)....................................................................3, 18

*Mareno v. Rowe*,
   910 F.2d 1043 (2d Cir. 1990)......................................................................6

*Merck & Co. v. Mediplan Health Consulting*,
   425 F. Supp. 2d 402 (S.D.N.Y. 2006)......................................................7, 8

*Murray v. British Broad. Corp.*,
   906 F. Supp. 858 (S.D.N.Y. 1995)........................................................16, 20

*Newlead Holdings Ltd. v. Ironridge Global IV Ltd.*,
   No. 14cv3945, 2014 U.S. Dist. LEXIS 80563 (S.D.N.Y. June 11, 2014) ...............9

*Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star*,
   899 F. Supp. 164 (S.D.N.Y.1995)..............................................................14

*Overseas Media, Inc. v. Skvortsov*,
   407 F. Supp. 2d 563 (S.D.N.Y. 2005)..........................................................5

*Palmieri v. Estefan*,
   793 F. Supp. 1182 (S.D.N.Y. 1992).........................................................9, 10

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)............................................................................14, 16

*Pollux Holding, Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003).....................................................................14, 20

*Postol v. El-Al Isr. Airlines, Ltd.*,
   690 F. Supp. 1361 (S.D.N.Y. 1988).............................................17, 18, 19, 20

*Richard Feiner & Co. v. BMG Music Spain, S.A.*,
   2003 U.S. Dist. LEXIS 2975 (S.D.N.Y. Feb. 27, 2003) ......................13, 14

*In re Ski Train Fire in Kaprun Austria*,
   499 F. Supp. 2d 437 (S.D.N.Y. 2007).......................................................18, 19

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014) ............................................................ 5, 7, 8, 9

*St. Michael Enters. & Walter Mihailovich v. Serbia Ministry of Privatization*,
   09-CV-05147 (SLT) (MDG), 2014 U.S. Dist. LEXIS 46151 (E.D.N.Y. Feb.
   18, 2014) ................................................................................................... 10

*Thomas v. Ashcroft*,
   470 F.3d 491 (2d Cir. 2006) ...................................................................... 5

*Usha (India), Ltd. v. Honeywell Int'l, Inc.*,
   421 F.3d 129 (2d Cir. 2005) .................................................................... 15

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ............................................................................ 12

*Warner Bros. Entm't v. Ideal World Direct*,
   516 F. Supp. 2d 261 (S.D.N.Y. 2007) ................................................. 7, 12

**Other Authorities**

FRCP 12(b)(2) ............................................................................................. 1, 5

FRCP 12(b)(6) ............................................................................................. 2, 3

N.Y. C.P.L.R. 301 ........................................................................................... 6

N.Y. C.P.L.R. 301-302 .................................................................................... 5

N.Y. C.P.L.R. 302(a) ................................................................................. 11, 13

# I. INTRODUCTION

This motion seeks dismissal of the complaint against each of the nine foreign Sony entities (collectively the "Foreign Entities")[1] on two grounds. First, pursuant to FRCP 12(b)(2), the entire complaint should be dismissed as to those parties because the court lacks personal jurisdiction over each of them. The second claim for relief—the only claim for relief alleged against the Foreign Entities—is based on the allegation that "while in their respective countries and without Plaintiffs' permission" . . . the Foreign Entities reproduced, distributed and/or publicly performed the song "Timber" without Plaintiffs' permission. (Complaint, ¶ 54). Thus, Plaintiffs admit that the claim against the Foreign Entities is based on their alleged activities in their respective countries of origin. There are no allegations that the Foreign Entities have done anything in New York.

In 2014, the United States Supreme Court limited the imposition of jurisdiction over a non-resident defendant. In *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014), the Supreme Court narrowly construed the general jurisdiction requirement such that a non-resident defendant is "present" <u>only</u> if its own connections, as opposed to the connections of an in-state subsidiary or affiliate, are so continuous and systematic as to render it "essentially at home" there. That is clearly not the case here, as the Foreign Entities do not have operations in New York and operate within their respective countries of origin. Nor is there any basis for specific jurisdiction, as the Foreign Entities have not engaged in any activities in New York in connection with their distribution of a recording of the song "Timber" in their respective countries of origin. The

---

[1] The nine entities are defined in the Complaint as the "Sony Affiliate Defendants." They include Sony Music Entertainment Canada, Inc., Sony Music Entertainment UK, Sony Music Entertainment Germany, Sony Music Entertainment Australia, Ltd., Sony Music Entertainment Italy, S.P.A., Sony Music Entertainment Mexico S.A. DE C.V., Sony Music Entertainment España S.L., Sony Music Entertainment Korea, Inc. and Sony Music Entertainment France.

complaint does not even allege otherwise.

Second, and separately, the court should dismiss this action against the nine Foreign Entities on forum non-conveniens grounds. Litigation regarding the application of the copyright laws of nine foreign countries will be extremely burdensome. Every one of the witnesses and documents for these nine entities are overseas, and it will be not only an expense, but a distraction on their business to force them to participate in litigation in New York. Moreover, given that the second claim for relief alleges the violation of the copyright laws of nine separate nations, this court will have to interpret and adjudicate the laws of every one of these foreign countries. Each country will have its own unique rules on issues of liability, defenses, and the calculation of damages. This will quite literally require the retention of counsel and translators in nine separate countries to prepare and argue legal briefings, jury instructions and special verdicts forms on issues of law. Each time a legal issue concerning these laws arises, the parties will by necessity have to submit a total of 18 expert declarations (one for each country from each side) to educate the Court on complex issues of foreign copyright law. Twelve of those will have to be translated as they are from non-English speaking nations. Considering Plaintiffs' lack of connection to this forum, and the heavy additional burden on the Court and parties if the case were litigated here, dismissal on the grounds of forum non conveniens is warranted.

## II.     STATEMENT OF FACTS

The underlying facts of this case are set forth in more detail in Defendants' concurrently-filed motion to dismiss pursuant to FRCP 12(b)(6). The gist of the complaint against the Foreign Entities is that they allegedly distributed a recording of the song "Timber" in their respective countries of origin in violation (according to Plaintiffs) of their countries' copyright laws. Even though Plaintiffs acknowledge in their Complaint that the work in question was licensed by the Foreign Entities, Plaintiffs assert that under the copyright laws of each of the nine foreign

countries that the Foreign Entities needed a license from each copyright co-owner, including

Plaintiffs.  Defendants have raised several defenses in their concurrently-filed motion to dismiss

pursuant to FRCP 12(b)(6) including, among other things, that Defendants obtained valid

licenses through non-party Far Out Music, Inc. ("FOM"), who was authorized to license the

rights in question on behalf of the co-owners to "SF Bay" worldwide.  Moreover, given that the

work in question was admittedly properly licensed under U.S. Copyright law, the laws of the

foreign nations do not govern the question of whether the Foreign Entities were allowed to

distribute the songs in those foreign nations.  *See Itar-Tass Russian News Agency v. Russian

Kurier,* 153 F.3d 82 (2d Cir. 1998) and *Corbello v. DeVito*, 844 F. Supp. 2d 1136 (D. Nev.

2012).  As Defendants argue in their concurrently-filed motion to dismiss pursuant to FRCP

12(b)(6), dismissal of all claims against all parties is therefore warranted.

Regardless, the court here lacks jurisdiction over the Foreign Entities.  The Foreign

Entities are each incorporated under the laws of their country of origin.  *See* concurrently filed

Declaration of Wade Leak ("Leak Decl.") ¶ 4.  The Foreign Entities are involved in the signing

of recording artists and release and distribution of recorded music in those entities' respective

countries of origin.  *See* concurrently filed Compendium of Declarations Of Sony Music Foreign

Affiliates ("Foreign Decls.") ¶ 4; Leak Decl. ¶ 4.  Each Foreign Entity maintains an office or

offices within its country of origin and only produces and distributes recordings outside of the

United States.  *Id.*  Thus, typically the Foreign Entities release their recordings only within their

own territory.  Leak Decl. ¶ 4.

None of the Foreign Entities own real property in New York or maintain offices in New

York.  Foreign Decls. ¶¶ 5, 6; Leak Decl. ¶¶ 4, 5. Each of the Foreign Entities maintains an

executive staff, in house legal counsel, and other staff who are each dedicated employees of that particular Foreign Entity. Leak Decl. ¶ 6.

The Foreign Entities operate independently from SME. SME does not act as their agent. Leak Decl. ¶ 7. For example, SME and each of the Foreign Entities keep their own books and records, including their own set of general ledgers and financial statements. Foreign Decls. ¶ 10; Leak Decl. ¶ 7. SME does not perform marketing for any of the Foreign Entities. Leak Decl. ¶ 8. Instead, each entity is responsible for its own marketing in its own territory. Foreign Decls. ¶¶ 4, 7; Leak Decl. ¶ 8. The recordings of the artists signed to the Foreign Entities are distributed by each entity in its country of origin pursuant to an International Repertoire License agreement (the "IRL"). Foreign Decls. ¶ 8; Leak Decl. ¶ 9. The IRL sets forth the duties, responsibilities, and financial terms pursuant to which the recordings of each Foreign Entity are distributed abroad by other Foreign Entities. *Id.* The IRL was negotiated with input from counsel for each of the various entities that are a party to that agreement. *Id.*

Under the terms of the IRL, each party has the discretion to decide whether to release a track or an album offered to it; the IRL does not obligate any party to that agreement to release the recordings of any other party to the agreement. Foreign Decls. ¶ 9; Leak Decl. ¶ 10. Each party to the IRL makes independent business decisions about the recordings it will produce, as well as those that it will manufacture and release. *Id.* Similarly, each party to the IRL makes its own independent decisions regarding which artists to sign. *Id.*

Because each entity maintains separate finances and books and records, any sales made by a party to the IRL are made for that entity's own account, and not on behalf of any other party or entity. Foreign Decls. ¶ 10; Leak Decl. ¶ 11. Thus, as an example, if Sony España licenses a

track from Sony Mexico, the proceeds from the sales from that recording by Sony España in Spain are booked by Sony España as income.  Leak Decl. ¶ 11.

With respect to the song "Timber," none of the Foreign Entities came to New York to participate in the recording or production of the song or to work with any of the artists or producers.  Foreign Decls. ¶¶ 11, 12; Leak Decl. ¶ 12.  Nor did any of the Foreign Entities request a recording of the song from anyone in New York.  *Id.*  Rather, as with the manner in which the Foreign Entities obtain music from any other affiliate, the song was made available to the Foreign Entities electronically and accessed by them in their country of origin.  *Id.*

## III.    The Complaint Should Be Dismissed For Lack Of Personal Jurisdiction.

### A.    Legal Standard.

In order to survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "a plaintiff must make a *prima facie* showing" that the court has personal jurisdiction over each defendant.  *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).  The complaint must also adequately plead the grounds for jurisdiction; Plaintiffs cannot overcome a motion to dismiss for lack of personal jurisdiction based solely on conclusory allegations, as is the case here. *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008).

A personal jurisdiction inquiry requires two steps: "First, [the Court] determine[s] whether the defendant is subject to jurisdiction under the law of the forum state—here, New York. Second, [the Court] consider[s] whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).  In this case, because New York is the forum, the Court should look to New York state law to determine whether there is personal jurisdiction over the Foreign Entities.  *See Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 567 (S.D.N.Y. 2005).  Under New York's long arm statute, N.Y. C.P.L.R. 301-

302, a court may exercise personal jurisdiction based on either "general" or "specific" jurisdiction. *See Cutting Edge Enters. v. Nat'l Ass'n of Attys. Gen.*, 481 F. Supp. 2d 241, 245-46 (S.D.N.Y. 2007). Here, Plaintiffs appear to be relying on general jurisdiction given the allegations in the Second Claim for Relief that the alleged infringing activities were undertaken by the Foreign Entities "while in their respective countries." *See* Complaint ¶¶ 53, 54.

**B.     The Court Lacks General Jurisdiction Over The Foreign Entities.**

**1.     The Foreign Entities Do Not Have A Sufficient Presence In New York For This Court To Assert General Jurisdiction.**

Under N.Y. C.P.L.R. 301, general jurisdiction can only be asserted against a non-resident "if it is 'doing business' in New York so as to establish its presence in the state. A foreign corporation is said to be 'doing business' in New York if it engages in a continuous and systematic course of conduct in New York." *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (citations omitted). The New York courts "in applying the pragmatic test for section 301 jurisdiction have focused upon factors including: the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985). None are present here. Foreign Decls., *generally*; Leak Decl., *generally*.

In 2014, the United States Supreme Court severely limited the imposition of general jurisdiction to instances where the foreign entity itself, and not a domestic parent or affiliate, had sufficient contacts as to effectively be "present" in the forum state. *Daimler AG*, 134 S. Ct. at 757-62. Following this, a Second Circuit opinion found that "[t]he Supreme Court's [recent] decision in *Daimler* reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with

another forum are so substantial as to render it 'at home' in that state." *Sonera*, 750 F.3d at 223 (emphasis added). In *Daimler*, the Supreme Court held that in determining whether general jurisdiction exists, a corporation is generally "at home" in the state where it is incorporated and the state where it has its principal place of business. *Daimler AG*, 134 S. Ct. at 760. This is a decidedly high standard. "[E]ven a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum." *Sonera*, 750 F.3d at 226.

Plaintiffs plead legal conclusions, but provide no factual basis as to how each of the Foreign Entities allegedly have a "continuous and systematic course of conduct in New York" or could be considered "at home" here. *See* Complaint ¶¶ 22-24. The Complaint does not allege that the Foreign Entities, let alone each of them, do <u>anything</u> in New York to constitute a continuous course of conduct. Nor does it identify any of them as having operations, assets, accounts or other contacts in New York, other than a supposed affiliate relationship with one domestic Sony entity. Plaintiffs' generalized legal conclusions are not enough to withstand a motion to dismiss. *Warner Bros. Entm't v. Ideal World Direct*, 516 F. Supp. 2d 261, 267 (S.D.N.Y. 2007) (holding that "Plaintiffs' generalized allegation that all sixteen original Defendants had 'continuing and ongoing business contacts with residents of the state of New York'…is insufficient to establish jurisdiction"); *see also Merck & Co. v. Mediplan Health Consulting,* 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006) (holding that claims should be dismissed because jurisdictional allegations in a complaint were insufficient).

Here, none of the Foreign Entities have systematic contacts in New York and, certainly, none are "at home" here. *See generally* Foreign Decls. They do not have bank accounts, offices or other operations in New York and generally conduct their business out of their home

countries, not out of New York. *Id.* Plaintiffs' theory that they *each* are "at home" here is simply a made up conclusory allegation with no factual support.

### 2. Plaintiffs Cannot Rely On An "Agency" Theory To Assert General Jurisdiction.

Plaintiffs attempt to plead their way into jurisdiction by alleging an agency theory based on the conclusory allegation that SME, as a New York based entity, is allegedly the agent of each Foreign Entity. *See* Complaint ¶¶ 22-24. However, this very agency theory has been heavily criticized by the Supreme Court in *Daimler*. Prior to *Daimler*, the Second Circuit "interpreted New York law to potentially subject a corporation to general jurisdiction when it relies on a New York representative entity to render services on its behalf 'that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available.'" *Sonera*, 750 F.3d at 224. However, in *Daimler* the Supreme Court "expressed doubts as to the usefulness of an agency analysis…that focuses on a forum-state affiliate's importance to the defendant rather than on whether the affiliate is so dominated by the defendant as to be its alter ego." *Id.* at 225; *see also Havlish v. Royal Dutch Shell Public Ltd.*, No. 13 Civ. 7074 (GBD), 2014 U.S. Dist. LEXIS 138835, at *9 (S.D.N.Y. Sept. 24, 2014). The Supreme Court in *Daimler* rejected the Ninth Circuit's similar agency theory and held that basing jurisdiction on the fact that a corporation had an important affiliate in the state would impermissibly expand general jurisdiction beyond its constitutional limits. *Daimler AG*, 134 S. Ct. at 759-760.

Thus, the body of case law analyzing jurisdiction in the context of an agency relationship is no longer controlling after *Daimler* and *Sonera*. Yet, even in the earlier case of *Intersong-USA, Inc. v. CBS, Inc.*, 1990 U.S. Dist. LEXIS 11645 (S.D.N.Y. Aug. 30, 1990), a court found that a foreign affiliate of an international music distributor did not have a sufficient

"agency" relationship with its New York distributor sufficient to confer jurisdiction. The court evaluated CBS Music's "matrix agreements"[2] to determine whether under an agency theory CBS's foreign affiliates were subject to jurisdiction in New York. The court found that the matrix agreements were merely licensing agreements that resulted in royalties to the foreign affiliates. The court found that CBS had no control over its affiliates' day-to-day business and that the relationship stemming from the matrix agreements was not sufficient to find an "agency" relationship existed for jurisdiction purposes. This reasoning comports with *Daimler*. As the Supreme Court noted, working with an affiliate in New York is not the same thing as doing business in New York for jurisdictional purposes. *Daimler AG*, 134 S. Ct. at 761.

In *Palmieri v. Estefan*, 793 F. Supp. 1182 (S.D.N.Y. 1992), a district court came to the opposite conclusion as *Intersong*. Like *Intersong*, the court addressed whether it had jurisdiction over foreign affiliates of a domestic company by virtue of their relationship with a New York affiliate. Based on numerous facts the court determined that the New York affiliate's activities created an agency relationship sufficient to confer jurisdiction because they were "sufficiently important to the affiliates that if they had no representative, their own officials would undertake to perform them." *Id*. at 1192. Yet, that sufficiently "important" analysis is exactly what the Supreme Court criticized in *Daimler*. *Palmieri* is no longer good law. *See Sonera* at 225, citing *Daimler AG*, 134 S. Ct. at 759 ("[T]he inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer: Anything a corporation does through [its affiliate] is presumably something that the corporation would do 'by other means' if the [affiliate] did not exist"); *see also* numerous recent unpublished decisions addressing this issue, *Havlish*, 2014 U.S. Dist. LEXIS 138835 (noting that the agency theory has been highly criticized); *Newlead Holdings Ltd.*

---

[2] Those matrix agreements are different than the ones that exist today, nearly 25 years later, for the Foreign Entities.

*v. Ironridge Global IV Ltd*., No. 14cv3945, 2014 U.S. Dist. LEXIS 80563 (S.D.N.Y. June 11, 2014) (same); *St. Michael Enters. & Walter Mihailovich v. Serbia Ministry of Privatization*, 09-CV-05147 (SLT) (MDG), 2014 U.S. Dist. LEXIS 46151 (E.D.N.Y. Feb. 18, 2014) (relying on *Daimler* and rejecting agency theory of jurisdiction).

Indeed, in *Daimler*, the Court rejected the theory put forth in *Palmieri* that jurisdiction exists in any case where a local entity's activities are sufficiently "important" to the foreign entity such that if the local entity did not exist, the foreign affiliate would undertake to perform the work itself. *Daimler AG*, 134 S. Ct. at 759-60. It noted that such a theory would mean that there was personal jurisdiction in nearly any case where a foreign company relied on a local affiliate or subsidiary:

> The Ninth Circuit's agency finding rested primarily on its observation that MBUSA's services were "important" to Daimler, as gauged by Daimler's hypothetical readiness to perform those services itself if MBUSA did not exist. Formulated this way, the inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer: "Anything a corporation does through an independent contractor, subsidiary, or distributor is presumably something that the corporation would do 'by other means' if the independent contractor, subsidiary, or distributor did not exist."

*Id.* (internal citations omitted). In light of this, *Palmieri* and the agency decisions it relied on too easily conferred jurisdiction based on the finding that the local affiliates work was "sufficiently important" to the foreign entity. *See* Complaint at ¶ 24 (alleging that SME is sufficiently important to the Foreign Entities). The decision in *Intersong* that denied jurisdiction over CBS Music's foreign affiliates and required more than a mere licensing or affiliate relationship was therefore the correct approach.

Even if it were somehow still good law in light of *Daimler*, *Palmieri* is readily distinguishable from this case. Whereas in *Palmieri* the court found that there was significant reliance on and control by the New York entity, SME does not control the foreign affiliates here.

LA2396067.10
223548-10001

Foreign Decls. ¶¶ 5-12.  The entities operate independently and for their own benefit.  If SME did not exist, the Foreign Entities would not come to New York to perform the actions that SME was performing.  *Id.* ¶ 7.

### C. This Court Also Lacks Specific Jurisdiction Over the Foreign Entities.

N.Y. C.P.L.R. 302(a) confers specific jurisdiction over a non-domiciliary "as to a cause of action arising from any of the acts enumerated [below]…:

> **1.** transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> **2.** commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> **3.** commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> **4.** owns, uses or possesses any real property situated within the state." *Id.*

Here, the complaint does not contain any allegations as to what the Foreign Entities allegedly did in New York.  Indeed, the Complaint appears to rely on a general jurisdiction predicate based on the allegations in the Second Claim for Relief that the alleged infringement by the Foreign Entities took place "in their respective countries" Complaint, ¶¶ 53, 54. Paragraph 22 of the Complaint is the only section relating to any actions by the Foreign Entities. It merely makes the legal conclusion that they "have engaged in instances of purposeful activity directed at New York—activity which bears a substantial relationship to the copyright infringement alleged herein."  A legal conclusion like this that merely recites the legal standard (as opposed to facts) is not enough to satisfy pleading standards.  *In re AstraZeneca Sec. Litig.*,

559 F. Supp. 2d at 467.  In *Warner Bros. Entm't*, 516 F. Supp. 2d at 267, the court granted a Rule12(b)(2) motion in a copyright infringement case because "Plaintiffs' generalized allegation that all sixteen original Defendants had 'continuing and ongoing business contacts with residents of the state of New York'…is insufficient to establish jurisdiction."  The complaint certainly does not allege what *each* of the nine Foreign Entities allegedly did in New York.

The Supreme Court recently noted that the contacts of the plaintiffs or third parties, such as SME, are not sufficient to confer specific jurisdiction over a defendant.  *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("[w]e have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State") (citing *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U. S. 408, 417 (1984)) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").  Thus, in order to support a claim for personal jurisdiction, Plaintiffs cannot rely on any acts of other parties with whom the Foreign Entities allegedly work, including the acts of SME.

Nor could Plaintiffs allege facts sufficient to invoke specific jurisdiction.  The Foreign Entities have very limited contacts with New York and none specifically relating to "Timber."  *See* Foreign Decls. ¶¶  4-12.  None of them came to New York to obtain the master for "Timber" and none of them called or wrote to New York to request a license for it.  *Id.* ¶ 11, 12.  Although the Complaint, "on information and belief," alleges something it refers to as a "matrix agreement," it does not specify the nature of that agreement or how that means that the Foreign Entities somehow acted in New York.  In reality, the IRL, which is the operating agreement between each Sony entity, is international in its scope and is by no means focused on New York.

*See id.* ¶ 8.  The material distributed pursuant to that agreement is automatically made available to each party to the agreement, without a request, via the internet.  *See id.* ¶¶ 11, 12.

Plaintiffs, in their pre-hearing letter to the Court, relied on *Richard Feiner & Co. v. BMG Music Spain, S.A.*, 2003 U.S. Dist. LEXIS 2975 (S.D.N.Y. Feb. 27, 2003).  *Feiner* is unpublished and not binding on this court, especially considering the lack of detailed analysis it contains.   In a footnote in *Feiner*, the court found that a single act of "requesting" the master of a recording of a copyrighted song from New York was sufficient to confer specific jurisdiction under N.Y. C.P.L.R. 302(a).  *Id.  Feiner* stretches the outer limits of specific jurisdiction.  In other cases, the mere use of interstate mail or making a phone call from outside New York into the jurisdiction (e.g., a phone call to request a recording) is wholly insufficient to sustain personal jurisdiction. *Beacon Enters. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) (citing numerous cases and holding that "courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York."); *Bell Paper Box v. Trans W. Polymers*, 53 F.3d 920, 922-23 (8th Cir. 1995) (the use of "interstate facilities, such as telephones or mail" alone are insufficient to establish personal jurisdiction).

Even if *Feiner* was correctly decided, it is inapplicable.  Most importantly, unlike the defendant in *Feiner*, Plaintiffs here have not even alleged that the Foreign Entities "requested" a master tape or did anything else in New York to obtain the song.  Plaintiffs in the instant action are not able to make such an allegation because the Foreign Entities did not request the master in New York. Foreign Decls. ¶¶ 11, 12.  As described in the declarations from each affiliate, music originating from each territory is made available to the other affiliates electronically, which they then access in their country of origin.  *Id.*  Unlike the situation in *Feiner* more than 11 years ago, here the Foreign Entities do not need to request a song from any particular territory or go to that

territory to obtain it. Given the now digital nature of music, nor do they need to obtain a physical "master tape." *Id.* Nothing like the request in *Feiner* occurred in this case and the complaint does not allege otherwise. *Feiner* therefore cannot be used as the basis to assert specific jurisdiction here.

## IV. THE COMPLAINT SHOULD BE DISMISSED BASED ON THE DOCTRINE OF FORUM NON CONVENIENS.

It is well-settled under federal common law that the doctrine of *forum non conveniens* allows a court to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). Dismissal of an action therefore may be appropriate where "an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

In the Second Circuit, a *forum non conveniens* determination is guided by a three-step analysis. *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003). First, the Court determines the level of deference to afford the plaintiff's choice of forum. *Id.* Second, the Court determines "whether an adequate alternative forum exists." *Id.* Third, the Court "balance[s] [the] private and public interest to decide, based on weighing the relative hardships involved, whether the case should be adjudicated in the plaintiff's forum or in the alternative forum suggested by the defendant." *Id.* "While the moving party bears the burden of showing that an alternative forum is clearly more appropriate…the decision to grant or deny the motion to dismiss is entirely within [the court's] discretion." *Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star*, 899 F. Supp. 164, 167 (S.D.N.Y.1995) (citation omitted).

### A. There Is No Basis To Defer To Plaintiffs' Choice Of Forum.

"[T]he degree of deference given to a plaintiff's forum choice varies with the circumstances." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). For instance, "the choice of a United States forum by a foreign plaintiff is entitled to less deference." *Id.* (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)) ("The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. . . .When the plaintiff is foreign, . . . [the] assumption [favoring the plaintiff's choice of forum] is much less reasonable."). Deference to the plaintiff should be on a "sliding scale" depending on the plaintiff's connection to the forum. *See Usha (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005) (citing *Iragorri, supra*). Where the balance of interests strongly favors the defendant, the plaintiff's choice of forum need not even be considered. *Usha (India), Ltd.*, 421 F.3d at 134 ("irrespective of the level of such deference, the balance of private and public interests weighs decisively in favor of adjudicating the case in the courts of India rather than the Southern District of New York").

While a local plaintiff is entitled to a certain level of deference, courts nonetheless routinely dismiss cases brought by plaintiffs against foreign defendants on *forum non conveniens* grounds. *See, e.g., Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 154-59 (2d. Cir. 1980) (*en banc*) (affirming *forum non conveniens* dismissal of admiralty case brought by N.Y. corporation against Liberian corporation); *Henderson v. Metro. Bank & Trust Co.*, 470 F. Supp. 2d 294, 306-07 (S.D.N.Y. 2006) (dismissing case brought by American plaintiff against Philippine bank on *forum non conveniens* grounds in favor of Philippine courts).

Here, none of the Plaintiffs are New York citizens. Lee Oskar is a resident of Washington; Kerri Oskar is a resident of Arizona; and Gregg Errico is a resident of California.

Complaint ¶¶ 2-4.  They have asserted no connection whatsoever to New York and there is no reason to defer to their choice of forum here.  *See, e.g., Iragorri*, 274 F.3d at 71-72.

**B.      The Nine Foreign Countries Provide An Adequate Alternative Forum.**

"The requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in [another] jurisdiction, except in 'rare circumstances' when 'the remedy offered by the other forum is clearly unsatisfactory.'"  *Murray v. British Broad. Corp.*, 906 F. Supp. 858, 861 (S.D.N.Y. 1995) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)), *aff'd sub nom. Murray v. BBC*, 81 F.3d 287 (2d Cir. 1996).  The nine Foreign Entities are each domiciled in their respective countries and amendable to service there.  Their courts are well-equipped to handle copyright lawsuits such as this one.  Foreign Decls. ¶¶ 13, 14.  Plaintiffs acknowledge that each has robust copyright regimes, and there is no reasonable dispute that they each provide an adequate forum for a copyright claim.  *Id.*

**C.      The Public And Private Interests Strongly Favor Dismissal.**

The Supreme Court has set forth a flexible set of factors for determining whether a lawsuit should be dismissed on forum non-conveniens grounds.  *See Piper Aircraft Co.*, 454 U.S. at 249; *Gulf Oil Corp.*, 330 U.S. at 508. There are a number of important factors courts should consider, including: "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) the enforceability of a judgment if one is obtained; (4) the local interest in having localized controversies decided at home; (5) the remoteness of the forum from the situs of the event and the forum court's need to rely upon foreign law; and (6) all other practical considerations that make trial of a case easy, expeditious, and inexpensive." *Beekmans v. J.P. Morgan & Co.*, 945 F. Supp. 90, 93 (S.D.N.Y.1996) (*citing Gulf Oil Corp*, 330 U.S. at 508-09).

Here, the public interest factors weigh heavily towards dismissal in favor of adjudication in foreign courts. The public interest factors include "administrative difficulties due to handling litigation in congested centers instead of at its origin; holding a trial in view and in reach of those who are affected by it; a local interest in having localized controversies decided at home; and having trial in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Postol v. El-Al Isr. Airlines, Ltd.*, 690 F. Supp. 1361, 1363-64 (S.D.N.Y. 1988) (citation omitted).

This case involves nine Foreign Entities, six in non-English speaking countries. The entities are from Canada, the United Kingdom, Germany, France, Korea, Australia, Italy, Spain and Mexico. Litigating in New York will be an extreme burden on this court, particularly with respect to issues of foreign law which, according to Plaintiffs' theory at least, are the entire basis for this complaint. For each even remotely controversial issue this court must decide regarding foreign copyright laws (such as questions of infringement, defenses such as statute of limitations, choice of law issues, how copyright damages are determined, the scope of copyright protection, etc.) the parties will have to each submit expert testimony. That means there would be at least 18 expert declarations per issue on which the court would have to adjudicate for each and every legal brief (one legal expert declaration per side for each country, if not even more for the reply briefs). For the twelve declarations from non-English speaking countries, the parties will also have to obtain translators. The court will then have the burden of reviewing all of these submissions and deciding on issues of foreign law.

The fact that this Court will have to determine the law of nine different countries weighs strongly in favor of dismissal.[3] Courts in the Second Circuit have routinely held that even the interpretation of one foreign law, much less nine different foreign laws, weighs in favor of dismissal. *Postol*, 690 F. Supp. at 1365 ("Litigating this case in the Southern District of New York would be inconvenient and an inefficient use of the judicial resources of this court. In addition, it would deny Israel, the nation with courts most interested and best equipped to apply relevant law, any role in the decision of the case whatsoever"); *Beekmans*, 945 F. Supp. at 94 ("Moreover, Dutch courts are far better situated to apply and interpret Dutch law.") Judge Friendly has cautioned of the potential problems of American courts applying foreign law:

> [T]ry as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.

*Conte v. Flota Mercante Del Estado*, 277 F.2d 664, 667 (2d Cir. 1960). Here, the Court faces the difficulty of interpreting complex, and no doubt differing, international copyright schemes. The Court would be well within its discretion to dismiss the case so that the foreign courts can apply their own laws. *See, e.g.*, *In re Ski Train Fire in Kaprun Austria*, 499 F. Supp. 2d 437, 441 (S.D.N.Y. 2007).

In addition, the private interests weigh heavily in favor of dismissal. These factors include "the relative ease of access to sources of proof, availability for compulsory process for

---

[3] Defendants assert that United States law, and not the laws of the foreign nations, governs the question of whether the licenses to use portions of SF Bay in Timber are valid in foreign countries and that therefore the entire complaint should be dismissed. *See Itar-Tass Russian News Agency*, 153 F.3d 82; *Corbello*, 844 F. Supp. 2d 1136. Nonetheless, if this case were to proceed, questions regarding foreign law would be prevalent.

attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Postol*, 690 F. Supp. at 1363 (citation omitted).

Translations are another problem making this forum massively inconvenient. Not only will this result in a massive expense, but certainly legal nuances could get lost in translation. *In re Ski Train Fire in Kaprun Austria*, 499 F. Supp. 2d at 449 (finding that "[i]t would indeed be incomprehensibly cumbersome, incredibly costly and time-consuming to attempt to obtain and translate all of this [foreign] testimony and tangible evidence") (internal quotations omitted).

Each affiliate has submitted a declaration as to the inconvenience to their business and operations they would suffer as a result of this litigation pending in New York. *See* Foreign Decls. ¶¶ 12-15. It would be highly burdensome for the affiliates to travel to New York and participate in a litigation here. *Id.* It would require dealing with foreign counsel, language barriers and long travel times. *Id.* Overall, it would constitute a significant distraction to their business and operations. *Id.*

Counsel for the parties in New York will be even more burdened. They will have to coordinate with the foreign experts and translators on a regular basis. They will also have to coordinate with nine different clients, in different time zones, speaking different languages. Even getting the short declarations for this motion was a highly burdensome and difficult task to coordinate. The result of all this unnecessary work is an unfair burden on the Defendants and a diminished capacity to present a full defense.

Also, key witnesses and documents exist overseas. Foreign Decls. ¶¶ 12, 13. *Beekmans*, 945 F. Supp. at 93-94 ("Here, virtually all of the witnesses and other sources of proof are located

in the Netherlands or the United Kingdom. Beekmans lives in the Netherlands, and Meuli in

London. Other relevant witnesses include Trip, individuals at ING Bank, and others who may

testify about damage to Beekmans's reputation, all of whom live in the Netherlands.  If litigation

were to proceed in the United States, the parties would be unable to compel the testimony of

many of these crucial non-party witnesses, such as individuals at ING Bank, as they are not

subject to the compulsory process of this Court"). *See also Pollux Holding*, 329 F.3d at 75

(finding that balance of private factors tilted strongly in favor of England as the alternative forum

because "[defendant] identified several key witnesses whose testimony can be compelled only in

England while plaintiffs have not demonstrated that any material witnesses would be unavailable

there"); *Postol*, 690 F. Supp. at 1364 ("An even greater obstacle is presented by unwilling

witnesses who cannot be compelled to appear. For example, Israeli security forces, as foreign

non-party witnesses, are not subject to the subpoena power of this court…Since vital foreign

witnesses are not subject to the jurisdiction of this court, effective discovery would be difficult if

not impossible") (citations omitted).  Here, the burdens of litigating with a foreign defendants

addressed in the case law are multiplied nine-fold.

  Moreover, even if this Court were to render judgment in favor of Plaintiffs, Plaintiffs still

would need to enforce their judgment in nine foreign countries, because the Foreign Entities do

not have assets in New York.  *See* Foreign Decls. ¶ 5; *see Allstate Life Ins. Co. v. Linter Group,

Ltd.,* 994 F.2d 996, 1001 (2d Cir. 1993) (district court "properly recognized that any judgment

(whether by a United States or Australian court) will have to be enforced in Australia where all

of the [defendant's] assets are located.").  A judgment from this court might not even be

enforceable in each of the nine countries, which is another factor weighing in favor of dismissal.

*Murray*, 81 F.3d. at 294; *In re Ski Train Fire in Kaprun Austria*, 499 F. Supp. 2d at 451 ("The

inability to enforce [in the foreign country] whatever judgment results in this forum supports forum non conveniens dismissal").

## V.    CONCLUSION

For the foregoing reasons, the Foreign Entities request that the complaint against them be dismissed in its entirety.


Dated:   November 10, 2014                    Loeb & Loeb LLP


By: */s/ Barry Mallen*_____
    Barry E. Mallen
    William M. Brody
    10100 Santa Monica Blvd., Suite 2200
    Los Angeles, CA  90067

    Attorneys for Defendants