UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

| | |
|---|---|
| LEE OSKAR LEVITIN p/k/a LEE OSKAR, as an individual and d/b/a IKKE-BAD MUSIC; GREG ERRICO, as an individual and d/b/a RADIO ACTIVE MATERIAL PUBLISHING COMPANY; and KERI OSKAR, an individual,<br><br>                 Plaintiffs,<br><br>                -against-<br><br>SONY MUSIC ENTERTAINMENT, a wholly-owned subsidiary of SONY CORPORATION OF AMERICA, a New York corporation; MR. 305, INC., a Florida corporation; POLO GROUNDS MUSIC INC., a New York corporation; SONY MUSIC ENTERTAINMENT CANADA INC., a Canadian corporation; SONY MUSIC ENTERTAINMENT UK, a British entity of unknown form; SONY MUSIC ENTERTAINMENT GERMANY GMBH, a German limited liability company; SONY MUSIC ENTERTAINMENT AUSTRALIA, LTD., an Australian limited company; SONY MUSIC ENTERTAINMENT ITALY, S.P.A. an Italian corporation; SONY MUSIC ENTERTAINMENT MEXICO S.A. DE C.V., a Mexican corporation; SONY MUSIC ENTERTAINMENT ESPAÑA. S.L., a Spanish limited liability company; SONY MUSIC ENTERTAINMENT KOREA INC., a South Korean corporation; and SONY MUSIC ENTERTAINMENT FRANCE, a French entity of unknown form,<br><br>                 Defendants. | Civil Action No. 14 CV 4461 (PAC)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' REPLY TO OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** |

------------------------------------------------------------

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE FIRST CLAIM AGAINST THE DOMESTIC DEFENDANTS FAILS. | 2 |
|  | A. The Predicate Acts Doctrine Does Not Apply Because There Was No Infringement Under The Copyright Act. | 2 |
|  | B. The Writer Agreements Unambiguously Granted FOM The Right To Issue Licenses Worldwide. | 4 |
|  | C. Plaintiffs' Arguments Regarding The SSC Fail. | 6 |
| III. | THE SECOND CLAIM AGAINST THE FOREIGN AFFILIATES FAILS. | 7 |
|  | A. Under *Itar-Tass*, Ownership Issues Are Governed By U.S. Law. | 7 |
|  | B. No Moral Rights Were Violated. | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Corbello v. DeVito*,
 844 F. Supp. 2d 1136 (D. Nev. 2012) ................................................................. 2, 8, 9

*Curb v. MCA Records*,
 898 F. Supp. 586 (M.D. Tenn. 1995) ............................................................................ 4

*Davis v. Blige*,
 505 F.3d 90 (2d Cir. 2007) ................................................................................... 4, 7

*Fun-Damental Too v. Gemmy Indus. Corp.*,
 1996 U.S. Dist. LEXIS 18653 (S.D.N.Y.1996) .......................................................... 2, 3

*Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing*,
 211 F.R.D. 71 (E.D.N.Y. 2002) .................................................................................. 10

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
 153 F.3d 82 (2d Cir. 1998) ................................................................................ passim

*Maniolos v. United States*,
 741 F. Supp. 2d 555 (S.D.N.Y. 2010) .......................................................................... 5

*McKay v. Columbia Broad. Sys., Inc.*,
 324 F.2d 762 (2d Cir. 1963) ......................................................................................... 4

*Membler.com LLC v. Barber*,
 2013 U.S. Dist. LEXIS 135862 (E.D.N.Y. Sept. 23, 2013) .......................................... 4

*NFL v. Primetime 24 Joint Venture*,
 1999 U.S. Dist. LEXIS 15261, 7 (S.D.N.Y. 1999) ...................................................... 3

*NFL v. Primetime 24 Joint Venture*,
 211 F.3d 10 (2d Cir. 2000) ........................................................................................... 3

*Serdarevic v. Centex Homes*,
 LLC, 760 F. Supp. 2d 322 (S.D.N.Y. 2010) ................................................................ 5

*Update Art, Inc. v. Modiin Pub., Ltd*.
 843 F.2d 67 (2d Cir. 1988) ........................................................................................... 3

**Other Authority**

3 Nimmer on Copyright § 8D.01 ......................................................................................... 10

**Page(s)**

Geller, Int'l Copyright Law & Practice,
   INT § 1[3] (2013)..................................................................................................10

## I. INTRODUCTION

Both Lee Oskar and Gregg Errico signed Writer Agreements with non-party Far Out Music, Inc. ("FOM") assigning the copyright (or portions of it) to "SF Bay" to FOM and granting to FOM the power to exploit the work **throughout the world**.

The first claim against the "Domestic Defendants" fails to allege <u>any</u> violation of the U.S. Copyright Act. Plaintiffs allege that the Domestic Defendants are guilty of copyright infringement merely because they furnished a copy of "Timber" to SME's foreign affiliates who then distributed a recording of the song abroad. But even Plaintiffs concede that under the Copyright Act a co-owner cannot sue another co-owner, or its licensee, for infringement. Thus, the first cause of action does not state a claim for infringement because the alleged activities of the Domestic Defendants were based on a license issued by a co-copyright owner.

The second claim for relief against the "Sony Affiliate Defendants" for foreign infringement also fails as a matter of law for multiple reasons. First, Plaintiffs' lone grievance is their naked conclusion that the copyright laws of the foreign nations at issue require their consent before the work may be exploited in that country. However, Plaintiffs granted to FOM worldwide exploitation rights to the work in question, which FOM has been doing without complaint by Plaintiffs for almost forty years. Plaintiffs concede that the copyright to "SF Bay" is co-owned by FOM, Oskar and Errico. Both Oskar (1972 Agreement) and Errico (1977 Agreement) are parties to term songwriting agreements with FOM that granted to FOM an interest in the copyright to all songs written during the term and that grant to FOM <u>worldwide</u> administration rights, including the right to issue licenses regarding foreign exploitation. While FOM, as is customary among music publishers, also had the authors sign a single song agreement for "SF Bay" (the SSC), this agreement in no way alters or modifies the worldwide administration rights granted to FOM in the 1972 (Oskar) and 1977 (Errico) term agreements.

Finally, the Second Circuit in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998) held that, even in the context of a purported claim for foreign infringement, U.S. law must be applied to determine the rights of an owner. This is critical because under U.S. copyright law a copyright co-owner may issue a license without the consent of a co-owner and is immunized from claims of infringement as a result thereof. Thus, as addressed in the *Corbello* decision, and based on the underlying facts in *Itar-Tass*, the rights of co-owners -- i.e., whether they are treated as tenants-in-common -- is to be determined by U.S. law. Plaintiffs' attempt to morph an alleged violation of foreign copyright law into a violation of the U.S. Copyright Act is directly contrary to the holdings in *Itar-Tass* and *Corbello*, which collectively immunize parties from claims of foreign infringement pending in U.S. courts where the work is a U.S. sourced work and was properly licensed pursuant to U.S. copyright law.

## II. THE FIRST CLAIM AGAINST THE DOMESTIC DEFENDANTS FAILS.

### A. The Predicate Acts Doctrine Does Not Apply Because There Was No Infringement Under The Copyright Act.

Plaintiffs acknowledge that FOM is a "co-owner "of the worldwide copyright for "SF Bay" and that Defendants obtained a license to use the copyright throughout the world. *See* Dfts. Motion at 11-12. Plaintiffs contend, however, that rights granted under United States law are not valid under the laws of nine foreign nations and that the "Domestic Defendants" are liable for any act in the United States that led to a violation of a foreign law. However, the case law is clear that a "predicate act" taken in the United States is only actionable under the Copyright Act if the predicate act itself violated the Copyright Act. For instance, in *Fun-Damental Too v. Gemmy Indus. Corp.*, 1996 U.S. Dist. LEXIS 18653, 14 (S.D.N.Y.1996), the court identified the only exception to the rule that a party cannot be held liable under the Copyright Act for acts taken overseas, namely, that "[f]or this exception to apply, a plaintiff must first demonstrate that

the domestic predicate act…taking place in the United States at the very least must violate the Copyright Act." *Id.* at 16. Here, the so-called "predicate acts" are legal under the Copyright Act because the Domestic Defendants had a license from a copyright co-owner.

None of the cases Plaintiffs rely on concern a domestic act that <u>only</u> violated foreign law. The cases applying the predicate acts doctrine all concern acts in the U.S. where the defendant did not have a license from a co-owner. In *Update Art, Inc. v. Modiin Pub., Ltd*. 843 F.2d 67, 73 (2d Cir. 1988), an Israeli newspaper was found to have violated the Copyright Act because it reproduced a copyrighted work in the U.S. without a license. Unlike here, foreign law was not at issue and the defendant's copying violated Section 106 of the Copyright Act because the defendant lacked a license. In *Fun-Damental Too v. Gemmy Indus. Corp.*, *supra*, at 17, the Court found there was no violation of the Copyright Act because the "predicate acts" in the U.S. did not "violate[] any of the exclusive rights of the copyright owner as provided in Sections 106 through 118." Plaintiffs' reliance on *NFL v. Primetime 24 Joint Venture*, 211 F.3d 10, 11 (2d Cir. 2000) ("*NFL*") is misplaced. In *NFL*, a satellite TV provider "publicly performed" the copyrighted work by transmitting it into Canada even though the satellite provider did not have a license covering Canadian territory. Unlike this case, the laws of Canada were not at issue; the question was whether there was a performance in the territory beyond the scope of the license.

Here the Domestic Defendants have a license from a co-owner that, under U.S. law, is valid <u>worldwide</u>. Contrary to Plaintiffs' argument, the *NFL* Court did not hold that any domestic act that enables a violation of a foreign law is actionable. Indeed, if the satellite provider in *NFL* had a license for Canada, the NFL would not have had any claim under the Copyright Act. *See e.g. NFL v. Primetime 24 Joint Venture*, 1999 U.S. Dist. LEXIS 15261, 7 (S.D.N.Y. 1999) (District Court recognized that if the broadcaster had a statutory license to broadcast in Canada

that would have been a defense). In *Curb v. MCA Records*, 898 F. Supp. 586, 595 (M.D. Tenn. 1995), cited by Plaintiffs, the Defendant also lacked a license for Hong Kong, Japan and Australia. Taking acts in the United States to distribute beyond the scope of the license violated the Copyright Act. The laws of the foreign nations were not at issue.

Plaintiffs incorrectly claim that these cases apply because "FOM lacked the authority to unilaterally issue a worldwide license." But under U.S. law each co-owner is authorized to freely license the work and a co-owner cannot sue another co-owner or its licensees for infringement, which is exactly what Plaintiffs are trying to do here. *Davis v. Blige*, 505 F.3d 90, 98-100 (2d Cir. 2007) ("a licensee is not liable to a non-licensing co-owner for use authorized by the license, because the licensee's rights rest on the license conveyed by the licensing co-owner"). "[U]nder federal copyright law, a valid license granted by a holder of a copyright 'immunizes the licensee from liability to the other co-holder for copyright infringement.'" *McKay v. Columbia Broad. Sys., Inc.*, 324 F.2d 762, 763 (2d Cir. 1963); *Membler.com LLC v. Barber*, 2013 U.S. Dist. LEXIS 135862, at *22 (E.D.N.Y. Sept. 23, 2013) ("a license from one co-author to a third party also shields the third-party from liability"). Plaintiffs' unsupported and untrue reference to some industry "custom" is irrelevant. The custom, and case law, is that under U.S. law a co-owner has the right to license the work worldwide.

### B. The Writer Agreements Unambiguously Granted FOM The Right To Issue Licenses Worldwide.

Plaintiffs fail to acknowledge the Writer Agreements that Lee Oskar and Gregg Errico signed with FOM. Mr. Errico agreed that FOM could exercise his licensing rights, including: "<u>the right to…license or sell…reproductions.</u>" Ex. B to Goldstein Decl., filed in support of Dfts. Motion (as corrected by notice of errata) at ¶ 3(c) (iv); *see also* ¶¶ 3(c)(iii) and (vi). The Agreement further states that "Writer does hereby irrevocably . . . authorize . . . Publisher [FOM]

". . . to take and do such action . . . which Publisher from time to time, may deem desirable or necessary to vest in Publisher, Publisher's successors, assigns and licensees, any of the rights or interests granted by Writer hereunder…." *Id.* at ¶ 6. Lee Oskar's agreement similarly grants to FOM the rights to publish the works worldwide. Goldstein Decl. Ex. A. Paragraph 2 provides that FOM, as "Publisher," acquired the "<u>exclusive worldwide publication</u>" rights to the compositions that are subject to the agreement. Paragraph 4 states that FOM can use Oskar's name when "exploiting, distributing and selling" the works. Paragraph 6 even requires FOM "to use its best efforts to exploit the compositions and to derive maximum income therefrom. Publisher, however, reserves the right to determine, in its sole discretion, the manner, extent and terms of exploiting the composition." FOM's role as the administrator, and its right to license and exploit the works worldwide on behalf of Errico and Oskar, are not ambiguous and thus on a motion to dismiss the Court may resolve disputes over contract interpretation. *Serdarevic v. Centex Homes*, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010). "Clear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations." *Maniolos v. United States*, 741 F. Supp. 2d 555, 569 (S.D.N.Y. 2010).

Plaintiffs argue that the SSC for "SF Bay" somehow eviscerates FOM's rights to exploit the work that had been previously granted by Errico and Oskar to FOM in their term songwriting agreements. But the agreements are not in conflict with the SSC with respect to FOM's ability to administer or license the rights. Even if the SSC adjusted ownership percentages for SF Bay it did nothing to eliminate Errico and Oskar's grant to FOM of the right to exploit the songs. Moreover, even if Plaintiffs are correct that under the SSC there is a "Publisher" entity that is some tripartite group consisting of FOM, Errico and Lee Oskar, FOM would still have the right to exploit the works because Errico and Lee Oskar granted FOM the right to do so on their

behalf. FOM thus controlled the rights of all three entities that made up the Publisher.

Plaintiffs also assert that an agreement from 1975 supplementing Lee Oskar's 1972 Writers Agreement leaves ownership of Oskar's non-WAR catalog split evenly between FOM and Oskar. Even if the agreement did that, it left the other provisions of the Agreement intact with "identical terms and conditions…except as amended below." ¶ 2(a). Thus, FOM's rights to license, administer and exploit Oskar's works worldwide were not affected.

### C. Plaintiffs' Arguments Regarding The SSC Fail.

There is no interpretation of the SSC under which Plaintiffs can prevail. If the rights granted to the "Publisher" in the SSC also are retained by each of the three parties to the SSC then each of the three parties would also be given all other rights given to the "Publisher" under the SSC, including the right to exploit the work. *See e.g.* SSC ¶¶ 1, 7, 11, 12 (giving the Publisher the worldwide right to "license…any of its rights…under this agreement to any person firm or corporation…"). This theory is the correct one, as demonstrated by Plaintiffs' admission that each of the three parties are "co-owners" and were each granted the rights given to the Publisher. The alternative theory that Plaintiffs put forth is that FOM does not have any rights under the SSC because the SSC only assigned their rights to a "Publisher" entity and not any of the individual parties. However, as demonstrated by the copyright registrations they submit, Plaintiffs readily admit all three parties remain as "co-owners" and that their rights were not assigned away to another "tripartite" entity.[1]

---

[1] Although the Court need not decide the application of Paragraph 15 of the SSC to rule on this motion, that paragraph does state that the Writer Agreements control over the SSC. Plaintiffs try to avoid this by arguing that Paragraph 15 does not apply because the "Publisher" is not a party to the Writer Agreements. As Defendants explained in their moving papers, this is not the case. Regardless, Paragraph 15 is irrelevant because Paragraph 9 of Errico's Writer Agreement states that it controls over any SSC. *See* Corrected Goldstein Decl., Ex. B, ¶ 9. Not only does this evidence the parties' intent, but regardless of the effect of Paragraph 15, it means FOM has control over Errico's rights and thus a majority of any so-called "Publisher" entity.

## III. THE SECOND CLAIM AGAINST THE FOREIGN AFFILIATES FAILS.

### A. Under *Itar-Tass*, Ownership Issues Are Governed By U.S. Law.

The second claim is predicated on Plaintiffs' argument that under foreign copyright law all copyright owners must consent to a license. However, the 1972 Oskar and 1977 Errico Writers Agreements eviscerate this argument given that each agreement granted FOM worldwide administration and licensing rights. This claim must be dismissed for this reason alone.

Even notwithstanding these agreements, a separate basis exists for the dismissal of the second claim given that controlling law provides that a U.S. sourced work properly licensed under U.S. law immunizes a party from claims of infringement under foreign law. In *Itar-Tass,* the Second Circuit expanded on proper choice of law principles for international copyright disputes. *Itar-Tass Russian News Agency*, 153 F.3d at 90. The Court decided that questions of infringement were to be decided by the law where the infringement occurred. *Id.* It held that "[i]ssues of ownership of rights" are to be decided by the laws of the country with the most significant relationship to the copyright, which is typically the "country of origin." *Id.* Plaintiffs argue this is just an infringement case. While infringement under foreign law is part of this case, this case also involves a determination of ownership, i.e., what are the rights of the co-owners of the copyrights, vis-à-vis licensing. Defendants position is that under U.S. law, the general rule that co-owners are "<u>tenants in common</u>, with each co[-]owner having an independent right to use or license the use of a work, subject to a duty of accounting to the other co[-]owners for any profits," should be applied in this case. *Davis*, 505 F.3d at 98 (emphasis added). That is undoubtedly an ownership issue, regardless of any alleged foreign infringement.

In *Itar-Tass*, the court concluded that "ownership" issues do not merely concern questions of who owns the rights, but <u>also</u> concern the nature and scope of the interest owned and the rights of the owner. *Itar-Tass Russian News Agency*, 153 F.3d at 92. "Whether a copy

infringes depends in part on the scope of the interest of the copyright owner. Nevertheless, though the issues are related, the nature of a copyright interest is an issue distinct from the issue of whether the copyright has been infringed…"*Id.* at 91. Similar to this case, the Court decided Russian law would determine the ownership question of what rights a Russian publisher had to use the work. One "ownership issue" addressed was whether "the publisher could grant a license to a third party to publish an article…" *Id.* at 92. The Court also considered as an ownership issue whether the law: "accords publishers of compilations the right to exploit such works…while expressly reserving to 'authors of the works included' in compilations the 'exclusive rights to exploit their works independently of the publication of the whole work.'" *Id.*

In *Corbello v. DeVito,* 844 F. Supp. 2d 1136 (D. Nev. 2012), the court decided that the question of whether one co-owner could validly convey the rights to a work is an ownership issue to be decided by the law of the country most connected to the copyright, i.e., the United States. Plaintiffs' citation to generalized excerpts from non-binding treatises notwithstanding, *Corbello* is well-reasoned and persuasive. The court analyzed choice of law principles, including *Itar-Tass*, in depth. It then specifically applied *Itar-Tass* to the exact situation here to find that "licensing is more akin to ownership than infringement" and that "<u>[u]nder the reasoning of [*Itar-Tass*], a person who is an owner of copyright under the law where he becomes a joint owner may perform the disputed act with impunity even in jurisdictions where his ownership would not be recognized had he purported to obtain it in that jurisdiction.</u>" *Id.* at 1157 (emphasis added). The same reasoning applies here to bar Plaintiffs' second claim.

Plaintiffs desperately try to distinguish *Corbello* on numerous grounds. First they argue that there was a flip-flop between a prior unpublished decision. But there was no flip-flop. The prior *Corbello* decision simply noted in passing the laws of the foreign nations barred

exploitation without licenses from all co-owners. It did not decide this issue or address choice of law issues under *Itar-Tass.* At that stage in the proceedings, the parties were not required to raise the choice of law issue and, when they later did, the Court issued a proper ruling regarding it. Plaintiffs also argue that the rule set forth in *Corbello* would lead to "absurd" results because U.S. law does not have extraterritorial application. But the Court in *Itar-Tass* did not limit the choice of law doctrine to cases only involving acts in the U.S. It stated clearly that when determining ownership issues the copyright laws of the country with the most significant connection to the copyright governs. It specifically noted that infringement issues could be determined by one country, and ownership issues by another. This is not an extraterritorial application of U.S. law, but merely a choice of law principal for determining the rights of owners. In any case, Defendants are not applying the Copyright Act extraterritorially as this case is being litigated in the U.S. concerning licenses originally granted in the U.S., with the strongest connection to the U.S. The "absurd" result would be that parties like Defendants could issue license in the U.S. that are valid here but subject its sub-licensees to varying and unpredictable liability under the laws of countless nations. It makes much more sense to apply a consistent understanding of the rights of owners based on the locale where the ownership interests arose.

Plaintiffs' repeated references to treatises and some "expectation" that international licenses need the permission of co-owners is misplaced. *See Itar-Tass Russian News Agency*, 153 F.3d at 89 (Second Circuit notes that reliance on Nimmer is misplaced and that Nimmer is "optimistic" and "overstates" certain issues). *Itar-Tass* set forth the binding rules. Even if the treatises are informative—which they can be at times—Defendants disagree as to the prevalent understanding of the parties' rights and the scholarship on this issue. None of the treatises Plaintiffs cite address the issue at hand, they merely point out that some countries require the

consent of co-owners—a non-controversial issue. No case has ever held a properly licensed foreign entity liable as Plaintiffs are attempting to do here. The only case to address the issue has found that U.S. law would apply to determine the rights of co-owners. If this case were pending in Germany or the other countries, as perhaps it should be, the foreign courts could apply their own choice of law principles. Since it is not, *Itar-Tass* applies.

### B. No Moral Rights Were Violated.

Plaintiffs argue that notwithstanding any license they have "moral rights" to block the use of the work. Moral rights do not overcome the *Itar-Tass* holding that when in the United States an owner's rights are determined by United States law—not by foreign laws. Here, the co-owners had the right to license without the consent of any moral rights holders.

Even if moral rights are relevant it is simply not true that Plaintiffs have moral rights to block the release of Timber. Plaintiffs only cite to a non-binding excerpt from Nimmer on historical French moral rights. They have not shown that there are moral rights in the nations at issue here, such as Korea or Mexico. Even Nimmer acknowledges that these moral rights vary by country. 3 Nimmer on Copyright § 8D.01; *see also* Geller, Int'l Copyright Law & Practice, INT § 1[3] (2013). Nor have Plaintiffs stated a claim for violation of moral rights, as the doctrine only applies in limited circumstances and does not bar any and all use of a composition in a derivative work. *Id.* The complaint here is utterly vague as to how any moral rights have been violated and where. As such, if moral rights are relevant (they are not), the complaint is not sufficient to state a claim. *Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing*, 211 F.R.D. 71, 81 (E.D.N.Y. 2002) (conclusory allegations are insufficient to state a claim).

Dated: December 22, 2014        Loeb & Loeb LLP

By: */s/ Barry Mallen*
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067