UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                            :

LEE OSKAR LEVITIN /p/k/a LEE OSKAR,  :
as an individual and d/b/a IKKE-BAD    :
MUSIC; GREG ERRICO, as an individual  :
and d/b/a RADIO ACTIVE MATERIAL   :
PUBLISHING COMPANY; and KERI     :
OSKAR, an individual,               :

                            :

            *Plaintiffs*,        :

                            :

        *-against-*          :

                            :

SONY MUSIC ENTERTAINMENT, a     :
wholly-owned subsidiary of SONY     :
CORPORATION OF AMERICA, a New   :
York corporation; MR. 305, INC., a Florida :
corporation; POLO GROUNDS MUSIC,  :
INC., a New York corporation; SONY   :
MUSIC ENTERTAINMENT CANADA   :
INC., a Canadian corporation; SONY MUSIC :
ENTERTAINMENT UK, a British entity of :
unknown form; SONY MUSIC        :
ENTERTAINMENT GERMANY GMBH, a  :
German limited liability company; SONY  :
MUSIC ENTERTAINMENT AUSTRALIA,  :
LTD., an Australian limited company; SONY :
MUSIC ENTERTAINMENT ITALY, S.P.A., :
an Italian corporation; SONY MUSIC   :
ENTERTAINMENT MEXICO S.A. DE C.V., :
a Mexican corporation; SONY MUSIC   :
EINTERTAINMENT ESPAÑA, S.L., a    :
Spanish limited liability company; SONY :
MUSIC ENTERTAINMENT KOREA INC., a :
South Korean corporation; and SONY MUSIC :
ENTERTAINMENT FRANCE, a French   :
entity of unknown form,          :

                            :

          *Defendants.*      :

                            :
-------------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: <u>April 22, 2015</u> |

14 Civ. 4461 (PAC)

**OPINION & ORDER**

1

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs Lee Oskar Levitin ("Levitin"), Greg Errico ("Errico"), and Keri Oskar ("Oskar") (collectively, "Plaintiffs"), writers of the musical composition "San Francisco Bay," bring this action for (i) domestic copyright infringement under 17 U.S.C. § 106; and (ii) foreign copyright infringement. Plaintiffs' suit against Sony Music Entertainment ("SME"), a wholly owned subsidiary of Sony Corporation of America, Mr. 305, Inc., and Polo Grounds Music, Inc. (collectively, "Domestic Defendants"), and Sony Music Entertainment Canada Inc., Sony Music Entertainment UK, Sony Music Entertainment Germany GmbH, Sony Music Entertainment Australia, Ltd., Sony Music Entertainment Italy, s.p.a., Sony Music Entertainment México S.A. de C.V., Sony Music Entertainment España, S.L., Sony Music Entertainment Korea Inc., and Sony Music Entertainment France (collectively, "Affiliate Defendants"), arises out of the international release of the song "Timber," which contains interpolations of "San Francisco Bay."

All Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Affiliate Defendants also move to dismiss the complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative, based on the doctrine of forum non conveniens. For the following reasons, the Court grants the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) with respect to the Domestic Defendants, but denies it with respect to the Affiliate Defendants. The Court denies the Affiliate Defendants' motion to dismiss for lack of personal jurisdiction and forum non conveniens.

## BACKGROUND

Plaintiffs co-wrote the song "San Francisco Bay" in 1978. Compl. ¶ 26. That same year, the song was publicly released on Levitin's solo album titled "Before the Rain." *Id.* On April 20, 1978, Plaintiffs signed a standard form songwriters contract (the "SSC"), which transferred ownership in the song's copyright as follows: 25% to Levitin's publishing company Ikke-Bad; 25% to Errico's publishing company, Radio Active; and 50% to non-party Far Out Music ("FOM"), collectively referred to as "the Publisher" in the SSC. *Id.* ¶ 27; Ex. A to Compl.[1] On July 3, 1978, FOM registered "San Francisco Bay" with the U.S. Copyright Office, listing Ikke-Bad, Radio Active, and FOM as the copyright claimants and incorrectly listing Plaintiffs as work-for-hire authors. *Id.* ¶ 28. FOM later submitted a supplementary registration partially correcting this error with respect to Oskar, but failed to correct the error for Errico and Levitin. *Id.* ¶ 29. Accordingly, the registration erroneously states that Errico and Levitin are work-for-hire authors, which is incorrect, since none of the Plaintiffs were work-for-hire authors. *Id.* ¶¶ 29-30.

In 2013, a group of writers including Kesha Seybert, Armando Christian Perez (a/k/a "Pitbull"), and Lukasz Gottwald co-wrote "Timber," which "without Plaintiffs' permission, makes copious use of the melody and harmonica riff of 'San Francisco Bay.'" *Id.* ¶ 31. Defendants created a master sound recording and music video of "Timber," performed by Pitbull and Seybert. *Id.* ¶ 32. The harmonica player in the recording, Paul Harrington, was told to

---

[1] Defendants have informed the Court of a suit in the Central District of California brought by Plaintiffs against FOM and non-party BMG (the administrator for FOM) to determine how to divide the 32% publisher's share of the proceeds from "Timber." Def. 12(b)(6) Mem. at 1. While Defendants assert that the instant action is a "tactical maneuver by Plaintiffs to aid them in resolving the dispute in the California action," *id.* at 2, Plaintiffs' motives with respect to the California suit are irrelevant to the dispute at hand.

3

"emulate [Levitin's] harmonica performance from 'San Francisco Bay' so that the harmonica lines in 'Timber' would have an identical texture and sound as 'San Francisco Bay.'" *Id.* "Timber" is thus "a reproduction of copyright-protected elements within 'San Francisco Bay,' and a derivative work based on 'San Francisco Bay.'" *Id.* ¶ 33.

Domestic Defendants sought to exploit "Timber" on a worldwide basis and to that end "offered, transmitted (physically and/or electronically), and otherwise made available 'Timber'" to the Affiliate Defendants. *Id.* ¶ 34. On October 7, 2013, "Timber" was released to the public internationally. *Id.* ¶ 35. With the "encouragement, authorization, and assistance" of Domestic Defendants, the Affiliate Defendants digitally and physically released "Timber" in their respective countries: the United Kingdom, Italy, Germany, Mexico, Spain, Canada, Australia, France, and South Korea. *Id.* Domestic and Affiliate Defendants have wrongfully profited from the exploitation of "Timber" in these countries. *Id.* "Timber" has been hugely successful and has reached top chart positions in the U.S., U.K., Canada, Germany, and on Europe's "Euro Digital Songs" chart, and has achieved multi-platinum sales in the U.S., Australia, Canada, and South Korea. *Id.* ¶ 36. Defendants "'might' have obtained a license from [FOM] purportedly giving worldwide permission to use 'San Francisco Bay' in 'Timber,'" but have never obtained the requisite license from Plaintiffs for such use. *Id.* ¶ 37. Without a license from all of the copyright holders of "San Francisco Bay," Defendants cannot exploit "Timber" in the countries of the Affiliate Defendants. *Id.* ¶ 38. Affiliate Defendants have thus violated the copyright laws of their respective countries by infringing on Plaintiffs' "moral and economic rights." *Id.* ¶ 41.

Plaintiffs allege that Domestic Defendants have committed copyright infringement in the following ways:

4

- Violating 17 U.S.C. § 106(1) and (2) by "creating duplicate master tapes and/or electronic files of 'Timber' for distribution to and/or public performances via streaming or other broadcasting to the Sony Affiliate Defendants, among others, abroad" while in the United States. *Id.* ¶ 43.

- Violating 17 U.S.C. § 106(3) and/or (4) by "distributing and/or streaming or other broadcasting of 'Timber'" to the Affiliate Defendants abroad while in the United States. *Id.* ¶ 44.

- Violating 17 U.S.C. § 106(3) by "making 'Timber' available" to the Affiliate Defendants "for download through the Internet and/or via Domestic Defendants' intranet/extranet-based, worldwide matrix distribution systems" while in the United States. *Id.* ¶ 45.

- Violating 17 U.S.C. § 106(3) by "offering to distribute copies of 'Timber' to the Sony Affiliate Defendants, among others, for purposes of further distribution and/or public performance abroad" while in the United States. *Id.* ¶ 46.

- Violating 17 U.S.C. § 106 by "signing agreements with the Sony Affiliate Defendants, among others, for the foreign exploitation (*e.g.*, foreign reproduction, distribution, and/or public performance) of 'Timber'" while in the United States. *Id.* ¶ 47.

- Violating 17 US.C. § 106 by "authorizing the . . . Affiliate Defendants, among others, to commit actions abroad which infringe and continue to infringe Ikke-Bad's and Radio Active's various exclusive rights" while in the United States. *Id.* ¶ 48.

Plaintiffs allege that the Affiliate Defendants have an agency relationship with SME such that Affiliate Defendants would undertake the activities performed by SME in New York, were it not for the agency relationship. *Id.* ¶ 23. The products marketed abroad by Affiliate Defendants derive from the recordings of artists signed in New York, and Affiliate Defendants market their material in New York exclusively through SME. *Id.* ¶ 24. Additionally, a matrix agreement grants SME and each Affiliate Defendant the exclusive right to manufacture and distribute within its territory any recording in the repertoire of SME. *Id.* ¶ 24 n.1.

Affiliate Defendants have each submitted a declaration describing how each Affiliate Defendant operates independently, does not own property or assets in New York, does not share employees with SME, did not take any actions in New York to obtain "Timber," and would be severely burdened by facing a lawsuit in New York. *See* Compendium of Declarations of Sony

5

Music Foreign Affiliate Defendants.  Plaintiffs have submitted exhibits which they argue

demonstrate that the Affiliate Defendants are all part of a global conglomerate, for example a

printout of Sony Corporation of America's website, which describes SME as a "global recorded

music company" that "operates in 43 countries and territories worldwide" with headquarters in

New York. *See* Freundlich Decl., Ex. 2 at 2.

## DISCUSSION

### I.       Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

#### A.  Legal Standard

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations in

the complaint and construes the complaint in the light most favorable to the plaintiff. *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  The complaint must "provide the grounds upon

which [plaintiffs'] claim rests through factual allegations sufficient 'to raise a right to relief

above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d

Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  The Court assesses only "the legal feasibility of

the complaint" at this stage and does not "assay the weight of the evidence which might be

offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011)

(internal citations and quotation marks omitted).  The Court "may consider . . . any written

instrument attached to the complaint as an exhibit or any statements or documents incorporated

in it by reference," as well as "matters of which judicial notice may be taken, [and] documents

either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing

suit." *Kalyanaram v. Am. Ass'n of Univ. Professors*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal

citations, alterations, and quotation marks omitted); *ATSI*, 493 F.3d at 98.

6

**B. Analysis**

Defendants argue that Plaintiffs' U.S. Copyright Act claim against Domestic Defendants fails because Domestic Defendants possess a valid license to the work and because the complaint alleges no "predicate acts" on the part of Domestic Defendants that constitute a violation of the U.S. Copyright Act. *See* Def. 12(b)(6) Mem. Defendants argue that the claim against Affiliate Defendants must be dismissed because foreign copyright laws requiring licenses from all co-owners of a copyrighted work do not apply in the U.S. and because agreements between the parties provided FOM with the right to license the work worldwide. Plaintiffs oppose the motion, alleging that Domestic Defendants committed illegal predicate acts, that foreign copyright law applies to the alleged foreign infringements, and that Defendants' interpretation of the relevant contracts is incorrect and at least raises a question of fact. Pl. 12(b)(6) Mem.

**1. Claim Against Domestic Defendants Under the U.S. Copyright Act**

Defendants argue that Plaintiffs have failed to state a claim under the U.S. Copyright Act because Domestic Defendants had a license to the work and, under the U.S. Copyright Act, a co-owner may license a copyright unilaterally, without the authorization of the co-owners. [2] In addition, Domestic Defendants argue that they cannot be liable for alleged violations of foreign copyright laws because Plaintiffs have not alleged that any actionable predicate acts of infringement were taken by Domestic Defendants in the U.S. Def. 12(b)(6) Mem. at 11-16.

The U.S. Copyright Act does not have extraterritorial application, and district courts do not have subject matter jurisdiction over infringement occurring outside of the United States. *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988); *De Bardossy v. Puski*,

---

[2] Plaintiffs do not object to Domestic Defendants' argument that Domestic Defendants are not liable based on their exploitation of "Timber" in the U.S. because they properly obtained a license from FOM for use of the work in the U.S. Pl. 12(b)(6) Mem. at 5. Under U.S. copyright law, a co-owner of a copyright may grant a license to use the work without the consent of the other owners. *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007).

7

763 F. Supp. 1239, 1243 (S.D.N.Y. 1991).  Accordingly, acts constituting copyright

infringement under foreign law do not constitute a violation of the U.S. Copyright Act.

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994).  There is an

exception to this rule, where an individual, who commits an act of infringement in the U.S.,

which permits further reproduction outside of the U.S.—a so-called "predicate act"—is liable for

infringement under the U.S. Copyright Act. *Update Art*, 843 F.2d at 73.  But the copyright

infringement plaintiff "must first demonstrate that the domestic predicate act was itself an act of

infringement in violation of the copyright laws." *Fun-Damental Too, Ltd. v. Gemmy Indus.

Corp.*, 1996 WL 724734, at \*4-5 (S.D.N.Y. Dec. 17, 1996) (finding that transporting a sample

product from the U.S. to a Chinese factory, as well as authorization and approval of the Chinese

factory's activities from the U.S., did not constitute an actionable predicate act).  "The clear

governing legal rule is that the predicate act occurring in the United States must itself constitute

*infringement* under the Copyright Act." *Music Sales Ltd. v. Charles Dumont & Son, Inc.*, 800 F.

Supp. 2d 653, 660 (D.N.J. 2009) (emphasis in original).

     Plaintiffs have failed to allege facts demonstrating a predicate act that in itself violates the

U.S. Copyright Act.  None of the actions taken by Domestic Defendants constitute a violation of

U.S. copyright law, when undertaken within the U.S.  For example, allegedly creating duplicate

master tapes or electronic files, distributing or streaming "Timber," offering to distribute copies

of "Timber," signing agreements, and "authorizing" Affiliate Defendants to commit infringement

abroad do not constitute violations of U.S. copyright law because Domestic Defendants

possessed a license considered valid under U.S. law.

Plaintiffs rely on outdated and overruled case law holding that the "authorization" of copyright infringement abroad constitutes a predicate act in violation of the Copyright Act. *See Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 634 (S.D.N.Y. 2009) ("This line of cases [treating authorization of foreign copyright infringement as an actionable predicate act] has been subsequently repudiated, and it is now generally accepted that there can be no liability under the Copyright Act for authorizing an act that itself could not constitute infringement of rights secured by United States law.") (citing *Subafilms*, 24 F.3d 1088, 1093-94). Unless "the act taking place in the United States . . . itself violate[s] the Copyright Act," *Fun-Damental Too*, 1996 WL 724734, at *5, there is no cause of action under the U.S. Copyright Act for foreign copyright infringement. Here, the copies and distributions made by Domestic Defendants were not unauthorized or somehow disallowed by Domestic Defendants' license. It is only when used or sold abroad that the copies become allegedly infringing under the laws of other countries. *See, e.g., Music Sales Ltd.*, 800 F. Supp. 2d at 659-60 ("If Defendant had made *unauthorized* copies of the music in the United States and then distributed those copies abroad, his conduct might have given rise to a cause of action . . . Because Defendant apparently possesses distribution rights of the sheet-music within the United States, however . . . no predicate infringing act occurred within the United States."). Domestic Defendants cannot be held liable for copyright infringement when their actions fail to constitute a violation of U.S. copyright law.

Plaintiffs rely on two cases in support of their argument that there are predicate acts constituting infringement under U.S. copyright law. Pl. 12(b)(6) Mem. at 8-9. In *National Football League v. Primetime 24 Joint Venture*, 211 F.3d 10 (2d Cir. 2000), however, the issue involved interpretation of the phrase "public performance," a question not relevant here. And the Court declines to adopt the reasoning of *Curb v. MCA Records*, 898 F. Supp. 586 (M.D. Tenn.

9

1995), which not only represents a different procedural posture and accordingly a differing set of applicable standards, but also rejects case law that has been accepted in this circuit. *See Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., Ltd.*, 2003 WL 42001, at \*5-6 (S.D.N.Y. Jan. 6, 2003) (noting the Second Circuit's acceptance of *Subafilms*).

For these reasons, the Court finds that Plaintiffs have failed to allege any violation of the U.S. Copyright Act by the Domestic Defendants. Accordingly, Plaintiffs' claim for copyright infringement against Domestic Defendants is dismissed.

## 2. Claim Against Affiliate Defendants for Foreign Copyright Infringement

Plaintiffs urge that under the copyright laws of each country of the Affiliate Defendants, all co-owners of a copyright must consent to the exploitation of a copyrighted work. Compl. ¶¶ 53-58. Affiliate Defendants respond that Plaintiffs' claim must be dismissed on two grounds: first, because these foreign copyright laws do not apply in this case, and second, because the parties' agreements allow FOM to license the work worldwide. Def. 12(b)(6) Mem. at 16-23. The Court rejects both arguments and denies Affiliate Defendants' motion to dismiss the foreign copyright claims against them.

## a. Applicability of Foreign Copyright Law

Affiliate Defendants assert that a determination of the legality of Affiliate Defendants' claims of a worldwide license must occur under U.S. law. This would result in a finding in favor of Affiliate Defendants, since U.S. law permits the licensing of a work with the approval of only one co-owner. Affiliate Defendants argue that under *Itar-Tass v. Russian Kurier News Agency*, 153 F.3d 82 (2d Cir. 1998), ownership of the relevant copyright is determined by U.S. law, and therefore foreign laws invalidating licenses issued by less than all co-owners are inapplicable to this case and no infringement occurred.

10

This argument is at odds with the *Itar-Tass* holding. Affiliate Defendants would have the Court apply U.S. law to a question of foreign copyright infringement. *Itar-Tass* holds that questions of ownership are determined by the laws of the country with the most significant relationship to the work in question (here, undisputedly, the U.S.), while questions of infringement are decided by the location of the alleged infringement. *Id.* at 90-92. Affiliate Defendants argue that in light of *Itar-Tass*, an analysis of ownership under U.S. law would show that FOM, as a co-owner, had the right to license "Timber" to the Affiliate Defendants, and therefore no foreign laws would be applicable. This argument rings hollow. The question before the Court is not one of ownership, but rather of infringement. And the question of infringement is answered in accordance with the laws of the country of infringement.

Affiliate Defendants rely on *Corbello v. Devito*, which found that "the foreign infringement claims will be controlled by the antecedent ownership issues resolved under U.S. law." 844 F. Supp. 2d 1136, 1157 (D. Nev. 2012), *rev'd on other grounds by* 777 F.3d 1058 (9th Cir. 2015).[3] But the Court does not find that reasoning compelling. The *Corbello* court provides no explanation for its conclusion that "the validity of a copyright license is more akin to ownership [than] infringement for the purposes of an infringement action" or that "once one has been declared to be a licensee under the law of the appropriate jurisdiction the issue is settled, and the person is a licensee for the purposes of an infringement action under the law of any other jurisdiction." *Id.* at 1157. *Corbello*'s conclusions are not supported by case law and indeed violate the *Itar-Tass* rule, that infringement questions are analyzed under the law of the place of

---

[3] The other cases relied on by Affiliate Defendants, *Sadhu Singh Hamdad Trust v. Ajit Newspaper Adver., Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577, 584-85 (E.D.N.Y. 2007), and *Shaw v. Rizzoli Int'l Pub., Inc.*, 1999 WL 160084, at *5 (S.D.N.Y. Mar. 23, 1999), each apply the law of *Itar-Tass*, examining ownership according to the laws of the country with the most significant relationship to the work and infringement according to the laws of the place of infringement. *See* Def. 12(b)(6) Mem. at 17-18.

11

infringement. *Itar-Tass* teaches that while "[w]hether a copy infringes depends in part on the scope of the interest of the copyright owner," "the nature of a copyright interest is an issue distinct from the issue of whether the copyright has been infringed." 153 F.3d at 91. Likewise here, while the two issues are connected, the copyright here is owned by FOM, Ikke-Bad, and Radio Active collectively, and properly licensed to other parties in the U.S. by FOM. Whether the copyright has been infringed by the purported worldwide licensing here is to be determined by the laws of each country in which infringement is alleged.

In seeking dismissal of the claims against Domestic Defendants under the U.S. Copyright Act, Defendants argue vehemently that the U.S. copyright laws do not apply extraterritorially. This principle continues to be true even when it ceases to support Affiliate Defendants' argument. The Copyright Act does not apply extraterritorially, and thus cannot determine questions of infringement in the countries of Affiliate Defendants.

### b.  Contractual Agreements

Affiliate Defendants also argue that Plaintiffs' claim against Affiliate Defendants must fail because a series of agreements between the parties permit the worldwide licensing of the work by FOM under all relevant copyright regimes. Affiliate Defendants assert that exclusive writer agreements signed by Levitin and Errico in 1972 and 1977, respectively, grant worldwide copyrights and exclusive worldwide publication rights to FOM, and that the SSC for San Francisco Bay "recognizes these agreements and states that they are controlling." Def. 12(b)(6) Mem. at 20. In addition, Affiliate Defendants argue that the SSC independently grants FOM the right to administer the worldwide copyright of San Francisco Bay. *Id.* at 21.

12

A reading of these contracts, however, does not reveal that as a matter of law FOM was given the exclusive right to unilaterally license "San Francisco Bay" worldwide. At this stage, the Court does not accept Affiliate Defendants' reading of the SSC, interpreting the term "Publisher" to refer exclusively to FOM when the agreement specifically defines "Publisher" as a combination of FOM, Ikke-Bad, and Radio Active. *See* Compl., Ex. A. Nor does the Court accept Affiliate Defendants' reading of the three separate contracts together granting FOM exclusive worldwide copyrights. Where contract language is "susceptible to differing interpretations, each of which may be said to be as reasonable as another, then the interpretation of the contract becomes a question of fact." *Harris v. Simon & Schuster, Inc.*, 646 F. Supp. 2d 622, 630-31 (S.D.N.Y. 2009) (internal citations and quotation marks omitted). Affiliate Defendants' intertwined and interdependent reading of the contracts is but one possible reading of these agreements.[4] Plaintiffs have suggested, and the Court finds reasonable, alternative interpretations of these contracts, and Defendants have not shown that their interpretation is correct as a matter of law. Accordingly, whether the contracts grant FOM the right unilaterally to license "San Francisco Bay" worldwide is a question that cannot be resolved on a motion to dismiss. Affiliate Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

---

[4] For example, the Court notes that Defendants use a change in typeface in support of their argument that ¶ 15 of the SSC specifically considered and incorporated the terms of the relevant songwriter's agreements. Def. 12(b)(6) Reply at 6 n.4. There are numerous other reasonable explanations for a change in typeface in a contract from 1978.

13

## II.    Affiliate Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) or On the Grounds of Forum Non Conveniens

### A.    Personal Jurisdiction

#### 1. Applicable Law

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) will be granted where the court lacks personal jurisdiction over the moving party. The burden of establishing jurisdiction falls on the plaintiff, *see In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013), but a plaintiff challenged on personal jurisdiction prior to discovery may defeat the motion simply by demonstrating a *prima facie* showing of jurisdiction based on legally sufficient allegations of jurisdiction, *see Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 83-85 (2d Cir. 2013). Personal jurisdiction is authorized by "the long-arm statute of the forum state" and limited by "the requisites of due process." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *accord In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 37-38 (2d Cir. 2014). New York's long-arm statute "provides, in pertinent part, that a court 'may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state,' so long as the plaintiff's 'cause of action aris[es] from' that 'transact[ion].'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (alterations in original) (quoting N.Y. C.P.L.R. § 302(a)). The Court must examine both "(1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal citations, alterations, and quotation marks omitted).

#### 2. Analysis

Defendants argue that the Court lacks personal jurisdiction over the Affiliate Defendants and so must dismiss the Complaint. Defendants assert that the Supreme Court's narrowing of the

14

general jurisdiction requirement in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), strips this Court of jurisdiction over Affiliate Defendants, and that the Complaint fails to allege activities in New York sufficient to confer specific jurisdiction.[5] Def. 12(b)(2) Mem. at 6-14. The Court agrees with Defendants that Plaintiffs cannot prevail on an agency theory of personal jurisdiction. Def. 12(b)(2) Mem. at 8-11; Def. 12(b)(2) Reply at 4-5. The use of agency to demonstrate general jurisdiction is now of dubious validity. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) ("*Daimler* expressed doubts as to the usefulness of an agency analysis . . . that focuses on a forum-state affiliate's importance to the defendant").

Plaintiffs assert that they are using an agency theory to demonstrate specific jurisdiction over the Affiliate Defendants. Pl. 12(b)(2) Mem. at 10-14. But Plaintiffs cannot base an argument for specific jurisdiction on au agency theory because they have not even attempted to allege that Affiliate Defendants exert any control over SME, a necessary element to demonstrate agency for the purposes of specific jurisdiction. *See Int'l Diamond Imps., Inc. v. Oriental Gemco (N.Y.), Inc.*, 2014 WL 6682622, at \*12 (S.D.N.Y. Nov. 24, 2014).

Plaintiffs have, however, made a prima facie showing of specific jurisdiction over the Affiliate Defendants. Under C.P.L.R. 302(a)(1), proof of one transaction in New York is sufficient to demonstrate jurisdiction. *See* C.P.L.R. § 302(a)(1) (establishing personal jurisdiction over those who "transact[] any business within the state or contract[] anywhere to supply goods or services in the state."). Courts have noted that "[a]lthough it is impossible to

---

[5] The parties dispute whether the Court can consider the additional evidence submitted by Defendants in support of this motion, that is, declarations from SME employees and employees of Affiliate Defendants regarding the independence of the Affiliates and lack of contacts in the U.S. The Court may consider materials outside the pleadings on a motion to dismiss for lack of personal jurisdiction, but such evidence must be considered in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. *See Gale v. Smith & Nephew PLC*, 2015 WL 328127, at \*2 (S.D.N.Y. Jan. 20, 2015); *AEP-PRI Inc. v. Galtronics Corp. Ltd.*, 2013 WL 4400833, at \*3 (S.D.N.Y. Aug. 13, 2013).

precisely fix those acts that constitute a transaction of business, [the New York Court of

Appeals'] precedents establish that it is the quality of the defendants' New York contacts that is

the primary consideration." *South Seas Holding Corp. v. Starvest Grp., Inc.*, 2015 WL 1084309,

at \*2 (N.Y. Sup. Ct. 2015) (internal citation and alteration omitted). A plaintiff must also show

that there exists a "substantial nexus between the business and the cause of action." *Grand River*

*Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (internal citation and

quotation marks omitted).

Here, Plaintiffs have alleged that Affiliate Defendants obtained the recording of "Timber"

from New York, Compl. ¶¶ 43-45; agreed to the further distribution of the recording in New

York, *id.* ¶¶ 46; and executed contracts for the foreign exploitation of "Timber" in New York, *id.*

¶ 47. In addition, Plaintiffs allege that Affiliate Defendants' products derive from recordings of

artists signed by SME in New York, Compl. ¶ 24, and the Affiliate Defendants market material

in New York through SME, *id.* Defendants have submitted affidavits to the contrary; but they

are not compelling. Construing the facts in the light most favorable to Plaintiffs, Affiliate

Defendants engage with SME in New York such that they are transacting business in the forum.

A clear nexus between the business in New York and the cause of action exists—Plaintiffs'

infringement claim is directly related to the Affiliate Defendants' acquisition of the "Timber"

recording through its activities in New York. Such allegations provide a *prima facie* showing of

jurisdiction over Affiliate Defendants sufficient to survive Affiliate Defendants' motion to

dismiss. *See, e.g.*, *Richard Feiner & Co. v. BMG Music Spain, S.A.*, 2003 WL 740605, at \*2 n.3

(S.D.N.Y. Mar. 4, 2003)[6] (in copyright case, finding that affiliate defendant's request for a copy

---

[6] Defendants urge the Court not to rely on *Feiner*, arguing that it "stretches the outer limits of specific jurisdiction" and is inapplicable to the case at hand because Plaintiffs have not alleged a similar "request" and because Defendants here did not convey a physical "master tape" because of the advent of digital music. Def. 12(b)(2) Mem. at 13-14. The Court rejects this argument for several reasons, first because *Feiner* was correctly decided, and

of recording from domestic recording company constituted single act sufficient to confer

personal jurisdiction over defendant); *accord Chloe v. Queen Bee of Beverly Hills, LLC*, 616

F.3d 158, 166-67 (2d Cir. 2010) (shipment of one infringing product, as well as certain business

activities in forum, constituted sufficient contacts for exercise of personal jurisdiction).

Defendants attempt a sleight of hand in order to dismiss Plaintiffs' claim. First,

Defendants claim that Domestic Defendants committed no predicate acts to enable copyright

infringement in the U.S. on their 12(b)(6) motion, an argument which the Court has credited.

*See supra* at 7-10. Next they suggest that Affiliate Defendants committed no acts in New York

in order to show that there is no personal jurisdiction. Defendants attempt to portray both

Domestic and Affiliate Defendants as entirely passive in the conveyance of the "Timber"

recording—yet this is incredible. The recording of "Timber" did not simply materialize in the

hands of Affiliate Defendants, and these asserted positions in Defendants' two motions are

untenable.

The Court is satisfied that in personam jurisdiction meets the requirements of due

process—indeed defendants do not even argue the point. "Since *International Shoe Co v.

Washington*, the touchstone due process principle has been that, before a court may exercise

jurisdiction over a person or an organization, such as a bank, that person or entity must have

sufficient minimum contacts with the forum such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d

122, 134 (2d Cir. 2014) (internal quotation marks omitted) (citing *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945)).

---

also because Plaintiffs have alleged more contact with the forum state than that alleged in *Feiner*. Moreover, the
argument regarding digital music versus master tapes is irrelevant both in light of the allegations here regarding the
creation of duplicate master tapes and the offer to distribute copies of "Timber," Compl. ¶¶ 43-46, and also the fact
that *Feiner* did in fact involve digital recordings. *Feiner*, 2003 WL 740605, at *2 n.3.

Plaintiffs have demonstrated the existence of Affiliate Defendants' minimum contacts with the forum. Plaintiffs' Complaint alleges that Affiliate Defendants have obtained recordings from SME in New York and have signed contracts in New York. The matrix agreements to which each Affiliate Defendant is a party allow Affiliate Defendants to use and benefit from recordings in SME's repertoire in New York. Compl. ¶¶ 24 n.1, 44-47. As such, Affiliate Defendants have "purposefully availed [themselves] of the privilege of doing business in the forum and could foresee being haled into court there." *Licci*, 732 F.3d at 170 (internal citation and quotation marks omitted).

The exercise of personal jurisdiction over Affiliate Defendants is also reasonable. In assessing reasonableness, the Court must consider the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Queen Bee*, 616 F.3d at 173. Affiliate Defendants argue that defending a lawsuit in New York would cause significant burden and expense because of the need to obtain attorneys familiar with U.S. law and to teach them about each Affiliate Defendant's country's copyright law, the location of witnesses in foreign countries, and the existence of documents in foreign languages. This is an exaggeration and, in any event, such inconvenience as may exist constitutes the cost of affiliating with a company that does business on a global scale. The remaining factors do not weigh in Affiliate Defendants' favor—the U.S. has an interest in ensuring that its citizens have a means of redress when injured by foreign entities, and New York has an interest in ensuring that companies transacting business in New York comply with the law. The exercise of jurisdiction here ensures efficient resolution—instead of having nine disparate lawsuits in nine separate countries involving the

same facts, the claims can be efficiently adjudicated here in one suit. Finally, the factor that weighs most heavily in this analysis is the plaintiff's interest in obtaining relief. Were this Court to decline to exercise jurisdiction, Plaintiffs would be forced to drop this case, as it would be virtually impossible for Plaintiffs to file and prosecute nine separate suits in nine separate countries. For these reasons, the exercise of jurisdiction here comports with the constitutional Due Process requirements. Accordingly, Plaintiffs have made the necessary showing of personal jurisdiction and Affiliate Defendants' motion to dismiss for lack of personal jurisdiction is denied.

### B. Forum Non Conveniens

#### 1. Applicable Law

The doctrine of forum non conveniens applies when "'a court abroad is the more appropriate and convenient forum for adjudicating the controversy,'" resulting in the dismissal of a case over which a court otherwise has jurisdiction. *Chigirinskiy v. Panchenkova*, 2015 WL 1454646, at \*6-7 (S.D.N.Y. Mar. 31, 2015) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)). When considering a motion to dismiss for forum non conveniens, the Court considers (1) whether to give deference, and how much, to the plaintiff's choice of forum; (2) whether an adequate alternative forum exists for adjudicating the dispute; and (3) whether the balance of private and public interests tips in favor of adjudication in one forum or another. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001). Where the chosen forum is genuinely inconvenient, the action may be dismissed. *Id.* at 74-75.

19

## 2. Analysis

Here, Plaintiffs' choice of forum is owed significant deference. The deference afforded to the plaintiff "moves on a sliding scale depending on several relevant considerations." *Iragorri*, 274 F.3d at 71. The Court considers whether the plaintiff is a U.S. citizen, the forum's convenience for the plaintiff, the availability of witnesses in the chosen forum, the defendant's amenability to suit in the chosen forum, the availability of appropriate legal assistance in the chosen forum, and any evidence of forum shopping on the part of the plaintiff. *Id.* at 71-72.

Plaintiffs are U.S. citizens and residents, and the fact that they are not residents of New York is irrelevant. *See Bohn v. Bartels*, 620 F. Supp. 2d 418, 429 (S.D.N.Y. 2007) ("[A]s a United States citizen [plaintiff's] 'home forum' is a United States Court.") (citing *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 (2d Cir. 2000)). While Plaintiffs are residents of Washington, Arizona, and California, New York is obviously more convenient for them than the nine separate countries of the Affiliate Defendants. While a significant number of witnesses may not be located here, because of the nature of this matter, "both parties will be required to call witnesses from a variety of jurisdictions," and thus this factor does not heavily weigh in Affiliate Defendants' favor. *See Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 2009 WL 3049604, at *5 (S.D.N.Y. Sept. 23, 2009). Moreover, there is no evidence whatsoever of forum shopping on the part of Plaintiffs. While Defendants attempt to suggest that Plaintiffs' failure to sue previous third-party licensees for copyright infringement suggests "strategic maneuver[ing]" that should not be allowed, this argument is irrelevant to the question of forum shopping and merely represents unsupported allegations asserted by Defendants.

Defendants here have shown that the nine foreign countries of Affiliate Defendants provide adequate alternative fora, because each Affiliate Defendant is domiciled in its respective country, is amenable to service there, and each country provides a robust copyright regime. The Court rejects Plaintiffs' assertions that Affiliate Defendants failed to show an adequate alternative forum by failing to stipulate to amenability of service and jurisdiction in other countries. Pl. 12(b)(2) Mem. at 15.

Next, the Court must balance the private and public interests implicated by the choice of forum, which requires "a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." *Iragorri*, 274 F.3d at 74.

The public interests to be considered are "(1) the administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the interest in having localized controversies decided at home; and (4) avoiding difficult problems in conflict of laws and the application of foreign law." *Rio Tinto PLC v. Vale S.A.*, 2014 WL 7191250, at *15 (S.D.N.Y. Dec. 17, 2014) (internal citations and quotation marks omitted). The plaintiff's choice is to be respected unless the balance of *both* public and private interests strongly justify transfer. *Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen AG*, 535 F. Supp. 2d 403, 421 (S.D.N.Y. 2008); *accord Manu Int'l, SA v. Avon Prods, Inc.*, 641 F.2d 62, 65 (2d Cir. 1981).

An analysis of the public interests shows that this element weighs slightly in favor of dismissal. Affiliate Defendants are correct that administrative difficulties will arise in litigating this case here, the controversy is not of strong interest to the forum, and the Court may have to decide foreign law. But courts "'must guard against an excessive reluctance to undertake the

21

task of deciding foreign law, a chore federal courts must often perform.'" *Augstein v. Leslie*, 2012 WL 77880, at \*3 (S.D.N.Y. Jan. 10, 2012) (quoting *Manu Int'l, S.A.*, 641 F.2d at 68). Moreover, Affiliate Defendants have not explained or suggested that the copyright laws at issue here are particularly complex. Indeed, Defendants may ultimately prevail on their contractual argument, which would eliminate any need to apply foreign laws. And the forum has some interest in hearing the claim, as discussed above. *See supra* at 19. Accordingly, although the public interests weigh slightly in Affiliate Defendants' favor, they are not dispositive and must be balanced with the factors favoring Plaintiffs' choice of forum.

The private interests weigh heavily in Plaintiffs' favor, as revealed by a comparison of the relative hardships. The private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, 875 F. Supp. 2d 264, 274 (S.D.N.Y. 2012). The focus for this inquiry is on convenience of litigants and on the actual issues to be tried. *Id.*

While access to witnesses and documents poses a slight challenge, "[t]he difficulties of discovery are mitigated by instant communication and rapid transport, especially for sophisticated corporate entities such as the parties in this case, thus diminishing any supposed inconvenience that litigating the case in this forum might impose." *Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*, 725 F. Supp. 2d 438, 443 (S.D.N.Y. 2010). Moreover, a number of witnesses will likely be located in the U.S. and regardless, wherever this case is ultimately litigated, necessary witnesses will have to travel. Defendants' assertions regarding the costs of

translations and witness travel are not compelling, particularly when considering in comparison the costs Plaintiffs would be forced to face in pursuing these claims in nine foreign countries.

It is obvious that Defendants seek to splinter "the suit into [numerous parts] in [numerous nations], complicate the suit, delay it, and render it more expensive." *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir. 1998). The consequences of dismissal for Plaintiffs would be the likely inability to pursue their claims, in light of the insuperable obstacles that three individuals litigating in nine different countries against sophisticated entities would face. In comparison, Affiliate Defendants are affiliates of a large corporation, which would not be prejudiced by having to defend this suit in this forum. Moreover, Defendants have failed to explain how it would be less burdensome for relevant witnesses to travel to nine separate countries to defend nine separate suits, as opposed to just one. Defendants have also failed to make clear why ultimate judgments would not be enforceable against them. Defendants' arguments to the contrary are unavailing, and their arguments of the "massive inconvenience and expense" are not compelling for a group of affiliated sophisticated entities.

Balancing these multiple factors supports a finding in favor of Plaintiffs' forum, particularly when considering that Plaintiffs' choice of forum is "to be respected unless the balance of interests *strongly* justifies a transfer." *See Cyberscan Tech., Inc. v. Sema Ltd.*, 2006 WL 3690651, at *9 (SD.N.Y. Dec. 13, 2006) (emphasis added) (internal citations and quotation marks omitted). For these reasons, Defendants' motion to dismiss the Complaint based on the doctrine of forum non conveniens is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6) is granted with respect to the Domestic Defendants and denied with respect to the

Affiliate Defendants. Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) or, in

the alternative, for forum non conveniens, is denied. The Clerk of Court is directed to terminate

the motions at Docket 28 and 32.

A status conference is scheduled for May 7, 2015 at 10:30 a.m. The parties are directed

to file a civil case management plan at least two days prior to the conference.


Dated: New York, New York        SO ORDERED
      April 21, 2015

PAUL A. CROTTY
United States District Judge